WILLIAM F. PECK, A TAXPAYER OF THE CITY OF ROCHESTER,. RESPONDENT, *v.* GEORGE BELKNAP, APPELLANT, IMPLEADED· WITH CORNELIUS R. PARSONS, AS MAYOR OF THE CITY OF ROCHESTER, AND OTHERS.

*Taxpayer's suit — that an officer has not passed the civil service examination is not a ground therefor — an appreciable wrong or substantial injury must be shown — who is not a subordinate officer, clerk or assistant within chapter 354 of 1883, and chapter 410 of 1884.*

The common council of the city of Rochester, on December 20, 1887, passed a. resolution "that the mayor be and he hereby is directed to enter into a contract with George Belknap to examine all street lamps, electric or gas, and their· location, and otherwise to assist the lamp committee in the designation and location of such lamps. * * * Also to report to said committee as often as. it may require, and at least once a month, to this common council, a general summary for the month preceding, of the foregoing matters, and also the number of lamps or lights that have been discontinued, and the authority or cause· therefor," etc.

In an action brought by a taxpayer to prevent the execution of this resolution, upon the ground that George Belknap, named therein, had not passed an examination under the civil service law of this State and the rules prescribed by the mayor of said city:

*Held,* that the end sought to be attained by such action could not be reached, under· the provisions of the taxpayers' acts, in the absence of some allegation or proof that the employment of this additional aid to the common council was not needful, or that the sums to be paid to Belknap were extravagant, or that the· employment of any person for such duties was unlawful under the city charter.

In order successfully to maintain an action under such acts, it must be made to· appear that it is brought to redress an appreciable wrong or to prevent a substantial injury.

*Ayers* v. *Lawrence* (59 N. Y., 192), *Hull* v. *Ely* (2 Abb. N. C., 440) followed.

That George Belknap, named in said resolution, was not, in the execution of the duties prescribed thereby, a subordinate officer, clerk or assistant within the· meaning of chapter 354 of the Laws of 1883, as amended by chapter 410 of the Laws of 1884; that it was the duty of the plaintiff, in an attempt to enforce· a statute, in derogation of the common law, to show clearly that the person, alleged to be amenable to its provisions, was among the inhibited class of persons mentioned therein.

*People ex rel. Ryan* v. *Civil Service Board* (41 Hun, 287) distinguished.

APPEAL by the defendant George Belknap from a judgment, entered in the Monroe county clerk's office on the 11th day of September, 1888, enjoining the mayor of the city of Rochester

from entering into a contract with the defendant George Belknap, as directed by a resolution of the common council of said city of Rochester, passed December 20, 1887, and certain other officers thereof, from drawing any orders upon the city treasurer, and enjoining the city treasurer from paying the same to the said Belknap for his services in the premises.

The resolution of the common council of the city of Rochester, for the defeat of which this action was instituted, was passed December 20, 1887, and was as follows:

"*Resolved*, That the mayor be and he hereby is directed to enter into a contract with George Belknap to examine all street lamps, electric or gas, and their location, and otherwise to assist the lamp committee in their designation and location of such lamps, and to open and keep a book wherein shall be entered the name of each street in the city whereon such gas lamps or electric lights are now or hereafter may be placed during the terms of said contract, together with the number of said lamps or said lights and the number and location of any such lamps or lights at any time not burning during any hours when the same is provided, by contract or otherwise, to be kept lighted, and the time when the same shall be unlighted, such entries to be made in said book on each and every day (Sundays excepted) during the period of said contract.   Also to report to said committee as often as it may require, and at least once a month to this common council, a general summary for the month preceding, of the foregoing matters, and also the number of lamps or lights that have been discontinued and the authority or cause therefor, if known to or ascertained by him, and the number and location of any and all lamps or lights that have remained unlighted, the name of the company owning or furnishing the same and the duration or time when the same shall have been unlighted during such month; and he shall perform such other duties as may be connected with the public street-lighting system of the city during the period of said contract; and, as may be required from time to time by said committee or this common council, to furnish to said committee and this common council, as it may at any time direct, written reports upon any of the subjects aforesaid. Said contract to contain such other conditions as may be suggested by said lamp committee; said contract to be completed on the 1st day of April, 1888, and the contract-price

to be the sum of $313.33, payable in three payments of $104.44 each on the 1st day of February, March and April, 1888 ; and the clerk shall draw orders in favor of said Belknap on the treasurer, payable from the lamp fund, at the times and for the amounts respectively as aforesaid ; * * * Said contract shall also provide that said Belknap shall examine into any and all complaints or charges of any of said lamps or lights having been unlighted at any time during the period of said contract, which shall have been received by him or come to his knowledge or information from any member or officer of the police department or said lamp committee or any of the members thereof."

This resolution was vetoed by the mayor upon the ground that it. was in violation of the civil service law, but the same was subsequently passed over such veto.

*John N. Beckley* and *H. J. Sullivan*, for the appellant.

*John H. Hopkins*, for the respondent.

MACOMBER, J. :

The plaintiff who brings this action is a taxpayer on an assessment of property of the value of $1,000 and upwards, and claims. the right to the relief granted to him by the Special Term, under the act of the legislature (Laws of 1881, chap. 531) entitled "An act. for the protection of taxpayers," and the amendment thereto contained in chapter 673 of the Laws of 1887.

The complaint makes suitable averments, bringing the plaintiff within the class of persons entitled to begin an action under these statutes, provided the object of the action is one which was contemplated by such laws. It is complained by him that the city of Rochester, by its officers, was about to execute, illegally, a contract with the appellant in pursuance of the resolution above quoted. The ground of the illegality is not stated to be that Mr. Belknap was. disqualified to discharge the duties of such employment, or that the. compensation to him was excessive, or that the common council had not the power to employ a proper person for the discharge of the duties described in the resolution. The complaint is put solely upon the ground that the city of Rochester and its officers should be. restrained from carrying into effect the above resolution, for the

reason that George Belknap, the appellant, had not passed the examination under the civil service law of this State and the rules prescribed by the mayor. The only allegation which would connect the failure to observe the civil service law with the right of the plaintiff, as a taxpayer, to interfere, is that portion of the complaint which alleges that, in consequence of the failure of the authorities to select for those duties a person who had passed the civil service examination, the funds of the municipal corporation would be wrongfully diverted and wasted and the plaintiff's property subjected to additional taxation.

The end sought to be attained by this action cannot be reached under the taxpayer's acts above mentioned. By the charter of the city of Rochester (Laws 1880, chap. 14, § 40) it was provided as follows: " The common council shall have the management and control of the fiscal and prudential affairs of said city, and of all property, real and personal, belonging to the city, and may make such orders and by-laws relating to the same as it shall deem proper and necessary." The twenty-third subdivision of such section, defining the powers of the common council, is as follows: " To provide for and regulate the lighting of streets and alleys, and the protection and safety of public lamps." The complaint contains no allegation that the object sought by the employment of some person to look after the lamps in the city, as described in the above resolution, was not legitimate and within this provision of the charter. Indeed, the history of the acts of the common council which finally led up to the adoption of this resolution of December 20, 1887, as contained in the case, shows that in consequence of the change which had been made, particularly in the outlying streets of the city, by way of substituting electric lights for gas lights and oil lamps, something more than a suspicion had been aroused in the minds of the members of the common council that bills had been presented by both electric-light and gas-light companies which, if not fraudulent, were, at least, carelessly made. It was believed, in many instances, that after the erection of the electric lamp, the gas-lamp bills continued to be presented. The lamp committee of the common council, which had this matter in charge, was not able to give it that personal and minute attention which the exigency required, and hence the adoption of the resolution above mentioned. The circumstance that

during the ensuing four months the sum of $8,000 and upwards was saved to the city, as the result of Belknap's services, as testified to by him, is unimportant and irrelevant to the question arising on this appeal, for the case must be judged as it was on the 20th day of December, 1887.

In the absence of some allegation and proof that the employment of this additional aid to the common council was not needful, or that the sums to be paid to him was extravagant, or that the employment of any person for such duties was unlawful under the city charter, it is difficult to see how a taxpayer can interfere by a suit in equity, with the action of the common council, upon the ground that the person so selected by that body was not eligible under the laws pertaining to the civil service of the State of New York. This plaintiff, if the employment of any person was proper, and the compensation fair, would not be obliged thereby to pay any more taxes by reason of the fact that the person so employed did not happen to have passed the examination required by the civil service rules. Had Mr. Belknap submitted to and passed the required examination the plaintiff's assessment would be the same.

The title of the act is significant. It is "An act for the protection of taxpayers." The main object of it is to prevent waste or injury to, or restore and make good any property, funds or estate of any municipality. The contract which was directed to be entered into by virtue of this resolution was not an illegal contract; nor is it deemed to be illegal by the plaintiff's counsel, except in so far as one party to it was an incompetent person to contract because he held no examination certificate. I am unable to find in the laws relating to the remedies of a taxpayer, any provision by which he can institute an action of this description where the sole question is a choice of competent employees. In order successfully to maintain the suit, it must be made to appear that it is brought to redress an appreciable wrong, or to prevent the infliction of a substantial injury. Otherwise, the case would lack that element of practicality without which the court ought not to be put in motion. A fanciful or an imaginary injury which touches the sentiments and emotions only, will not suffice.

In the case of *Ayers* v. *Lawrence* (59 N. Y., 192), where the individual taxpayer's right to bring suit under a similar act (Laws

of 1872, chap. 161) was most liberally upheld by a majority of the court, the decision was put wholly on the ground that the act to be restrained must be one prejudicial to the plaintiff in a pecuniary sense. Judge ALLEN there, with rare and forcible iteration, declares. that it is a threatened waste or injury to property or public funds only which would enable the individual taxpayer to call upon a court of equity to interfere against the threatened unlawful acts of a municipal body. So, also, in *Warrin* v. *Baldwin* (105 N. Y., 534), protection of public funds from waste was the foundation of the action as is pointed out in the opinion at page 539.

It was held in the case of *Hull* v. *Ely* (2 Abb. N. C., 440) that an action could not be maintained by a party in pursuance of the same statute when it was apparent that it was brought, not for his own protection, but for some other purpose.

I am of the opinion, therefore, inasmuch as the plaintiff fails to show a pecuniary loss by reason of the resolution of the common council, or that the proposed inspection of the lamps was not a proper subject for their consideration, that he cannot maintain this case under the act of 1881, as amended by chapter 673 of the Laws. of 1887.

But there is another reason for holding that the plaintiff's complaint must be dismissed, and it is, that the appellant Belknap is not a subordinate officer, clerk or assistant within the meaning of the Laws of 1883. (Chap. 354, § 8, as amended by the Laws of 1884, chap. 410, § 2.) By the regulations which the mayor of the city was authorized to make in pursuance of such laws, it was provided that all places in the public service of the city (with certain exceptions required by the statutes, namely, all elective officers and the subordinates in the city treasury and persons employed by or who seek to enter the public service under the board of education) must submit to the civil service examination. By the fourth regulation so made by the mayor, employees are classified as follows: (Schedule B. Part 1): "All officers and members of the police and fire departments." (Schedule B. Part 2): "All other subordinate officers, clerks and assistants." Schedule D includes all persons classed as laborers or workmen and are not claimed to be subject to examination before employment.

It is argued by counsel, and so decided by the Special Term, that

it is not shown that the appellant comes within the exception above mentioned which requires no examination. In my judgment, however, the burden was not thrown upon the appellant to show that he did not come within the exception, but, on the contrary, that it was the duty of the plaintiff, in an attempt to enforce a statute in derogation of the common law, to show clearly that the appellant was among the inhibited class of persons, and that he could not discharge the duties imposed upon him by virtue of the resolution of the common council. The case differs materially from that of *The People ex rel. Ryan* v. *Civil Service Boards* (41 Hun, 287) because in that case the main question was whether the applicant should be examined by the State Board or by the Civil Service Board of the city of New York. He applied for employment as bookkeeper in the construction of the new aqueduct, and under the laws pertaining to the city of New York, was clearly entitled to an examination by the civil service commissioners of that city. His proposed employment was purely clerical, and to all intents and purposes, permanent. In the case at bar, however, the appellant occupies the place of an independent contractor. The duties which were imposed upon him were limited to four months and were for a specific and well-defined purpose. The office of lamp inspector is not known to the city charter. There is no evidence before us to show that the common council intended to create and establish permanently any new office. On the contrary, it was ascertained by the council that immediate action ought to be taken in behalf of the city to save a multiplication of charges for lighting the streets, and the appellant was called in to aid the efforts of the lamp committee in that direction. Acting upon the powers bestowed by virtue of the charter already referred to, it was the right and within the well-defined powers of that body to employ the appellant for this special purpose. It could not be reasonably expected that the members of the lamp committee would be able to devote sufficient time to ascertain the requisite facts to enable the council to act in the premises. Their judgment in employing a special agent, who was not in any sense a clerk, but was rather a workman for a special purpose, cannot be questioned, otherwise all employees of the city, whose services are occasionally engaged by resolution of the common council, such as

lawyers and doctors and experts in special cases, would be subject to an examination by the civil service commissioners before they could enter upon the discharge of their duties.

For these reasons the judgment should be reversed, the injunction dissolved and the complaint dismissed, but without costs, insomuch as costs were not imposed by the Special Term.

BARKER, P. J., and DWIGHT, J., concurred.

Judgment reversed and complaint dismissed, without costs to either party.