# WALL, Appellant, v. CONTINENTAL CASUALTY COMPANY, Respondent.

### St. Louis Court of Appeals, March 21, 1905.

1. **PRACTICE: Bill of Excptions: Perfecting Appeal.** Where an appeal was allowed more than sixty days before a term of the appellate court, but the time for filing a bill of exceptions was extended until after the beginning of such term so that neither a complete transcript of the record nor a sufficient abstract of it could have been filed in the appellate court fifteen days before the term, that was sufficient excuse for failure to perfect the appeal in time for such term.

2. **PLEADING: Insurance: Petition.** In an action on an accident policy, a petition, otherwise sufficient, which alleged that the policy was issued by the insurer, a corporation, and then averred that the defendant, another corporation, prior to the accident, and for a valuable consideration, had assumed the liability to plaintiff for the amount due by the terms of the policy, was a sufficient statement of the cause of action against the latter corporation to permit the introduction of evidence in its support.

3. ———: ———: ———: **Harmless Error.** Where the petition averred that the defendant had bound itself for a consideration to discharge the liability of the insurer, an inaccurate expression in an instruction to the jury that, "if the defendant issued the policy," etc., was harmless.

4. ———: **Variance: Statutory Objection.** Where the petition, in such action alleged that the policy was issued by the insurer and that the defendant assumed and agreed to pay any liability to the plaintiff thereon, while the proof was that the defendant succeeded to the liability of the insurer, this at most was a variance between the petition and the proof as to the mode in which the defendant became bound, not an entire failure of proof in its entire scope and meaning, and, no advantage being taken of the variance in the statutory way, it was cured by verdict.

5. ———: **Alleging Contract: Statute of Frauds: Presumption.** Where the petition alleged the making of a contract as the basis of the defendant's liability, but did not show whether it was written or verbal, if it was such a contract as the statute of frauds required to be in writing, it will be presumed, in support of the petition, to have been written.

6. ACCIDENT INSURANCE: Proofs of Loss: Statement Against Interest. Where a policy of accident insurance provided that all statements, contained in the notice or proof of the accident, should be conclusive against the claimant as to matters therein stated, and the insured in his notice of the accident stated that he was injured on the seventh and quit work on the fifteenth of the month, but the reports of his attending physicians, which were made a part of his proof, stated that his injury disabled him immediately and continuously, the insured's statement in .the notice was not conclusive against his right to recover, but it was a question for the jury as to whether his disability was "*immediate* and total" within the terms of the policy:

7. ——: ——: ——. Where a clause, at the foot of the statement regarding the accident stated that the insured warranted what he said to be true and agreed to forfeit all rights under the policy if it was false, it was not intended thereby to provide that an erroneous statement innocently made by the claimant against his own interest should forfeit his right.

8. ——: Total Disability. An accident policy providing for indemnity to the insured for immédiate and total disability, where the disability comprehended was such as prevented the insured "from doing or performing any work, labor, business or service, or any part thereof," this·allowed the indemnity where the accident disabled him to do such work as, considering his ordinary employment, qualifications for affairs and station in life, could have been expected of him; the test as to whether he was totally disabled was whether his earning power was destroyed.

9. ——: ——: Casual Activity. That the insured after the injury may have been able to do chores, or casual business, which earned him no money, did not prevent his right to recover for total disability within the meaning of the policy.

10. ——: ——: ——. Where the insured was a brakeman on the railroad, and after the accident continued his runs for eight days, but, being unable to do the work himself, hired a substitute whom he merely directed, and during the time of this disability visited his farm, gave directions about the work and performed a trivial act of labor, it was a question for the jury as to whether his disability for work, labor, service or business, "or any part thereof," was such as came within the terms of the policy.

11. ——. Immediate Disability. If a period of eight days passed before the insured was unfit to work, during which time he continued his runs as usual, his disability was not "immediate."

12. ——: ——. But if he was unable to perform his duties as brakeman although he continued his runs for eight days after

the accident, hiring a substitute to do the work, whether his disability was "immediate," was properly submitted to the jury.

13. **PRACTICE: Time for Argument: Timely Exception.** In order that an appellant may have the appellate court review his complaint that the trial court would not allow him sufficient time for argument, he should have objected and excepted when the ruling was made which cut his argument short.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper,* Judge.

AFFIRMED.

*Davis & Steele* for appellant.

The court should have sustained defendant's objection to the introduction of any testimony under the petition. Under the policy sued on there was absolutely no cause of action alleged or attempted to be charged against this defendant in the petition after plaintiff had dismissed the case as to the defendant Railway Officials Association. When he dismissed his case against the Railway Officials Company—that put plaintiff out of court. The Statute of Fraud is absolutely fatal to his cause of action. Haeberle v. O'Day, 61 Mo. App. 390, R. S. 1899, sec. 3418; 21 Am. and Eng. of Law, 2nd Ed., p. 670 and cases cited. Also to the same effect Williams v. Accident Ass'n, 91 Ga. 698; Merrell v. Ins. Co., 64 N. W. Rep. 1039.

*Wm. B. Skinner, Edw. J. White* for respondent.

(1) Appellant's abstract shows that the appeal was allowed on November 25, 1903, which would have made the appeal returnable to the March term, 1904, of this court. Sosman & Landis v. Conlon, 59 Mo. App. 313; Kirkwood v. Cairns, 40 Mo. App. 631. These authorities are conclusive upon the question, in this court and it is manifest that the appellants appeal was not perfected in time or as the law directs, and should be dismissed.

(2)   Replying to appellants first point, in its brief, the Statute of Frauds does not require a party in his pleadings, to show a compliance with the statute, but a compliance, requiring an instrument in writing, to charge one upon a promise to answer for another's debt, is sufficient, if shown to be in writing, by the evidence, at the trial.

"The statute, instead of affecting the statement of facts, constituting the cause of action, only required the party to show, upon the trial, that he had complied with it." Bliss, Code, Pl. sec. 312, p. 458, (2 Ed.) ; Miles v. Jones, 28 Mo. 87.

"If a contract is set up in a petition which is good at common law, the defense that it is not writing as required by the Statute of Frauds, must be pleaded by him who would avoid it, and if not so pleaded, it is waived." Gardner v. Armstrong, 31 Mo. 536; Sherwood v. Saxton, 63 Mo. 78; Y. M. C. A. v. Dubach, 82 Mo. 475.

(3)   Under point four of its brief, appellant contends that the instruction given for appellant should have submitted the issue as to whether or not the appellant assumed and agreed to pay the obligation under the policy although it asked no instruction on this issue, itself.   Drew v. Doyle, 99 Mo. 459.

(4)   The plaintiff based its action, it is true, upon the assumption of liability by the Continental Casualty Company, by reason of its consolidation with the Accident Company which issued the policy.   It established the consolidation—from which the resulting liability would spring, as a matter of law—by undisputed evidence and the defendant also proved the fact of the consolidation, by its every exhibit introduced in evidence. Pope v. Cable Railway Co., 99 Mo. 400, 12 S. W. 891; Bank v. Hatch, 98 Mo. 376; Walker v. Kansas City, 99 Mo. 647, 12 S. W. 894; McGuire v. Railroad, 43 Mo. App. 354; Harrison v. White, 56 Mo. App. 175.

(5)   No showing of an injury to the defendant was or could be made, in any court, by reason of the instruc-

tion given by the trial court, and this was not a variance, within the statutory meaning of such material discrepancies between the pleadings and recovery as to mislead and injure a litigant, or a jury. R. S. Mo. 1899, secs. 655, 673; Liddell v. Fischer, 48 Mo. App. 449. "The objection for variance must be made in the trial court." Taylor v. Penquite, 35 Mo. App. 389; Ely v. Porter, 58 Mo. 158; Mooneyham v. Cella, 91 Mo. App. 260; Couquette v. Railway Co., 152 Mo. 257, 53 S. W. 897; Golden v. Clinton, 54 Mo. App. 100.

### STATEMENT.

As originally instituted, this action was against two defendants: the Railway Officials & Employes Accident Association of Indianapolis, Indiana, and the Continental Casualty Company. The action is based on a policy or certificate of accident insurance issued by the first named company. The Continental Casualty Company was included in the action because it had consolidated with the Accident Association, which originally issued the policy and had assumed the liabilities of that association. Before the trial began plaintiff dismissed as to the Accident Association and proceeded against the Casualty Company alone. Plaintiff, when insured, was a brakeman in the employ of the St. Louis & San Francisco Railroad Company and ran on freight trains from Springfield to Monett. He had been in that service for about four years. The policy, or as much of is as is preserved in the record, will be copied:

"RAILWAY OFFICIALS AND EMPLOYEES ACCIDENT ASSOCIATION, INDIANAPOLIS, INDIANA.

"In consideration of his written application, which is hereby made a part hereof, and the agreement to fully perform and abide by all the provisions and conditions of this contract, does hereby insure Charles J. Wall, of

Logan, Mo., by occupation a freight brakeman, and agrees to indemnify him subject to all the terms and conditions herein against physical, bodily injuries as hereinafter defined. The insurance under this policy shall extend to physical bodily injury, resulting in disability, as hereinafter expressed, and which shall be effected while this contract is in force, solely by reason of and through external, violent and accidental means, within the terms and conditions of this contract.

"Accidental injuries insured against, subject to the definitions and conditions below, and payments therefor:    . . .

"No. 8.   Loss of time for a term not exceeding 104 consecutive weeks, when immediately, continuously, and wholly disabled by an injury not herein before specified in provisions one to seven, inclusive, from doing or performing any work, labor, business or service or any part thereof, from the date of the accident causing the injury to the date of recovery.   Payment for injuries under No. 8 shall be at rate of ten dollars per week.

### DEFINITIONS AND CONDITIONS.

"Proceedings in case of injury.—Notice of the accident causing the injury or disability shall be given in writing, addressed to the association at Indianapolis, Indiana, within fifteen days from the date of the accident causing the injury or disability, stating the name, occupation and address of the insured, with date and full particulars of the accident causing the injury or disability and causes thereof; and failure to give such notice within said time shall render void all claims for such injury or disability. Also verified affirmative proof, in writing, of the injury or duration of disability must be furnished by the insured upon the blanks in use by the Association (which will be furnished upon application to the Association) within one month from the termination of disability, or within one month after the expiration of 104 weeks of such disability, if such disabilty

shall so long continue; and failure to furnish such proof within said time shall forfeit all claim for such injury or disability. All statements contained in the notice or proof above referred to shall be conclusive against the claimant as to the matter stated therein, and may be introduced in evidence in any action on this policy. No legal proceedings for recovery hereunder shall be brought within 90 days after receipt of such proof at the home office.

"This policy shall take effect at twelve o'clock noon (Standard Time) on the date hereof, and expires at the end of 12 months therefrom. Dated and signed November 17th, 1900."

It will be observed that the policy bore the date of November 17, 1900 and was to run for twelve months. The accident to plaintiff, for which he sues, occurred November 7, 1901, and during the life of the policy. The circumstances of the accident were these; at about half past six o'clock in the evening of the date just mentioned, the plaintiff started from his home in Springfield to go to the caboose of the train on which he was going out the next morning. He walked down the railroad track until he came to a viaduct over Washington avenue. The viaduct was not yet completed and the track passed over it on ties, the spaces between which are open. The evening was dark. The plaintiff fell from the viaduct and injured his left leg. His young son was with him at the time and fell too. There were also two men in his company, Mr. Neal and Mr. Robinson. The fall made plaintiff so sick at the time that he lay on the ground for a while, but recovered sufficiently to go to the caboose. The injury to his leg was a bruise and a break in the skin between the knee and the ankle, which developed into a bad running sore and laid the plaintiff up until August of the next year. He was discharged from the railroad hospital as fit for work August 15, 1902. This discharge was in writing and signed by the hospital surgeon. The answer of the defendant was a general denial, but the

actual defense was that the plaintiff did not sustain an injury within the terms of the policy and, therefore, the defendant was under no obligation to indemnify him for his lost time. By the terms of the policy the plaintiff was to be indemnified for loss of time due to physical, bodily injury resulting in total disability caused solely by external, violent and accidental means. The defendant contends that plaintiff's injury did not result in immediate or total disability as expressed in the contract; that it was shown by plaintiff's own testimony, and his statement to the defendant, that he was neither immediately nor totally disabled. That statement must be quoted:

"I, Charles J. Wall, age 37 years, holder of policy No. 193282 for $10 per week indemnity in case af accidental injury, sustained bodily injuries on the 7th day of November, 1901, and I warrant the answer to the following questions to be true:

"1. When did the injury occur? Month, November, day, 7th, hour, 6:30 p. m.

"2. What day of the month did you quit work on account of this injury? Mo., November, day, 15th, hour, at about 5:30 p. m.

"3. How long did the injury continuously and totally disable you from the prosecution of any and every kind of labor or business? Answer. Not able to resume work yet.

"4, Give the day of month you reported for work. Not reported—not yet well.

"5. What were you doing at the time injury was received, and how did the same occur? I was going to caboose to go out on my run, fell in viaduct over Washington avenue, skinning my left shin, about 3 1-2 inches long.

"6. What injury did you receive? Skinned left shin.

"7. Who were present at the time the injury was received? F. O. Neal and E. L. Roberson (brakeman).

"8. Amount insured in other accident associations or companies and name them. None.

"9. What was your occupation at the time of this injury? Brakeman.

"10. State whether on freight, passenger or mixed train. Freight.

"11. Name company engaged with at time of injury. St. Louis & San Francisco Railroad.

"12. Give name and address of your superintendent. Name, A. O'Hara; address, Springfield, Mo.

"I hereby warrant each of the above statements to be true, and any found to be untrue, shall forfeit all my rights to indemnity; and I agree for myself and beneficiary, that when this claim is paid, it shall be in full discharge of all claim under my certificate or policy on account of this injury; and I further agree to notify the general office immediately of any further injury I may sustain, and failure to do so shall forfeit my claim.

"Dated this 5th day of May, 1902.

(Claimant's signature.)      "CHARLES J. WALL.

"Notice.—No claim will be paid without a physician's statement. When injured, keep yourself under the doctor's care."

In the above document the plaintiff stated he was hurt on the 7th day of November and quit work on account of the injury on November 15th. Plaintiff went on two runs between the 7th of the month, the date he was hurt, and the 15th, when he entered the hospital. On these runs he was able to do no work. Neal, who was learning the duties of brakeman, went along and did all plaintiff's work and plaintiff paid him for it. At the end of a week plaintiff was forced to go to the hospital at Springfield and was laid up for many months. Sometimes during the period of retirement from service, he went to a farm he owned in Lawrence county and consulted with his hands about the affairs of the farm; ditching, shipping berries and other matters. He was required by the defendant to obtain a certificate from the

attending physician, to be made out on a blank furnished by the company for that purpose, containing at the head the announcement that the policy insured only for total disability.

The attending physician's statement was as follows:

"Accident Policies insure against total, not partial disability by accident, and no injury, not totally disabling, however painful or inconvenient, is covered under the terms of the policy.

"It should be the endeavor of the attending physician to dissuade policy holders from making claims for trivial injuries, as all such claims must be rejected, and it is mortifying to a claimant, who has made a claim through misapprehension or otherwise, to have it denied.

"1. When did you first see claimant for injury? Nov. 15th, 1901. How long did you treat him? Until April 10, 1902.

"2. Describe the injury, with symptoms, specifically. Several abrasions on anterior surface of left leg a few inches above the ankle and of about 3 1-2 inches in length. Swelling, pain followed by ulceration.

"3. Was there any external and visible sign of the above injury? Yes.

"4. Did the injury immediately, continuously and totally disable claimant from the prosecution of any and every kind of labor or business? Yes.

"5. How many days did such total disability continue? Continued up to April 10, 1902.

"6. Was claimant able to resume work when discharged by you? No.

"7. Was the injury herein claimed for the result of bodily infirmities or disease? No.

"8. Has any neglect or the use of intoxicants, or willful act of the claimant prolonged his present disability? Not to my knowledge.

"9.  What other injury, disease or cause, if any, has contributed to prevent recovery of claimant from the injury he describes in his statement?  None.

"10.  Do you know of any reason why the claim, as above made, should not be paid?  No.

"I, B. F. Newlon, of Springfield, Mo., the attending physician of Chas. Wall, claimant, do warrant each of the foregoing answers to be full and true.

"Dated this 5th day of May, 1902.

"B. F. NEWLON, M. D."

The following is the statement of the consulting physician:

"1.  When did you first see claimant after injury? Nov. 15, 1901.  How long did you treat him?  April 10th to August. 15, 1902.

"2.  Describe the injury, with symptoms, specifically.  An abrasion and laceration on left leg about 3 1-2 inches on spire of tibia.  Tumefaction; redness; local heat; an echemosis in the region of the injury.

"3.  Did you look for and was there any external and visible signs of the above injury?  Yes; as above mentioned.

"4.  Did the injury immediately, continuously and totally disable claimant from the prosecution of any and every kind of labor or business?  Yes.

"5.  How many days did total disabilitiy continue? From Nov. 15, 1901 to Aug. 15, 1902.

"6.  Was claimant able to resume work when discharged by you?  Yes.

"7.  Was the injury herein claimed for the result of bodily infirmities or disease?  No; injury only.

"8.  Has any negligent, or the use of intoxicants, or wilful act of the claimant prolonged his present disability?  No.

"9.  What other injury, disease, or cause, if any, has contributed to prevent recovery of claimant from the injury he describes in his statement?  None.

"10. Do you know of any reason why the claim, as above made should not be paid? No.

"I, J. E. Warden, M. D., of Springfield Mo., the attending physician of C. J. Wall, claimant, do warrnat each of the foregoing answers to be full and true.

"Dated this Aug. 15, 1902.

"J. E. WARDEN, M. D., Consulting Physician."

In addition to the physicians' statements the superintendent of the road was required to give a statement in which he certified that the plaintiff had done no work since the accident and he knew of no reason why the claim should not be paid.

The court gave this instruction for plaintiff:

"The jury are instructed that if the defendant on the 17th day of November, 1900, issued to the plaintiff, Charles J. Wall, the policy read in evidence, and if they believe from the evidence that said Charles J. Wall, on the 17th day of November, 1901, was accidentally injured by falling into the viaduct on Washington avenue in the city of Springfield, Missouri, whereby he sustained such violent accidential injury as to be externally visible upon his person, and which injuries, independent of all other causes, totally disabled him from performing any work or labor for the period of thirty-six weeks from date of said injury, and that the plaintiff gave defendant immediate notice, in writing, with full particulars of the accident, and furnished the defendant with affirmative proof thereof, within the time limited in the policy, then your verdict will be for the plaintiff in such sum as will compensate him for the full period of such disability at the sum of ten dollars per week."

For the defendant the court instructed as follows; except the italicized words.

"1. If you believe from the evidence that the defendant was injured at the time and place described in plaintiff's petition, on Nov. 7, 1901, and from then until the 15th day of November, 1901, continued in the service of the railroad company, performing the duties *or any*

*part of the duties* of brakeman after the date of said accident, then you must find for the defendant.

"2.    You are instructed that even should you find and believe from the evidence that the plaintiff fell and was injured at the time and place, as charged in the plaintiff's petition, yet you cannot find for him unless the injury resulting to him by reason of said accident was then and there so serious as to wholly disable him from the time of such fall, from continuing to carry on and perform the duties or any of the duties, of freight train brakeman, and if you find that the injury then received by the plaintiff was not of such character at the date of said fall, and grew worse from neglect or other cause, so that from the 15th of November thereafter said injury had become so serious as to disable plaintiff from continuing his said employment, then you must find for the defendant."

As requested by the defendant the first instruction contained the italicized words, "or any part of the duties," but the court struck out those words before giving the instruction.

These instructions asked by the defendant were refused:

"1.    The court instructs the jury that if they believe from the evidence that plaintiff was able to go out on his run as brakeman from the 7th day of November, 1901, until the 15th day of November, 1901, then plaintiff is not entitled to recover under the terms of the policy, and your verdict should be for the defendant.

"2.    The court instructs the jury that if they believe from the evidence that plaintiff during any of the time for which he claims damages or loss of time, was able to and did perform any duties or labor upon his farm, then he is not entitled to recover, and your verdict shoud be for the defendant.

"3.    The court instructs the jury that if they believe from the evidence that plaintiff went out on his run as brakeman from the seventh day of November until the

fifteenth day of November, 1901, and was paid his wages for said services during said time, then said injury was not immediate and continuous within the meaning of said policy, and your verdict should be for the defendant.

"4. The court instructs the jury that if they believe and find from the evidence in this case that plaintiff' in his proof of claim to the company, made the statement that he did not quit work on account of the injury he claims to have received until the 15th day of November, 1901, then your verdict should be for the defendant."

The defendant also requested, and the court refused, a direction to the jury to return a verdict for it. A verdict awarding the plaintiff $360 was returned; judgment was entered for that sum and the defendant appealed.

GOODE, J. (after stating the facts).—1. The appeal in this case was allowed more than sixty days before our March term, 1904; but was not perfected until the October term, 1904; the court below having granted until March 14th for the filing of the bill of exceptions, a day subsequent to the beginning of our March term. We therefore overruled the plaintiff's motion to dismiss the appeal and are reproached for that ruling, in the brief of his counsel, on the ground that it was inconsistent with the decisions in Kirkwood v. Cairns, 40 Mo. App. 631, and Sosman v. Conlon, 59 Mo. App. 313. It was held in those cases that the statutory regulation in regard to the term of the appellate court after judgment at which an appeal must be perfected, is mandatory, and the time allowed for filing the papers necessary to perfect the appeal in the office of the clerk of the appellate court runs from the date of the judgment and not from the date the bill of exceptions is filed. But it was not ruled that the time prescribed for perfecting an appeal is so imperative that no obstacle to complying with it will excuse an appellant. On the contrary it was conceded there could be a valid excuse for non-compliance. In the present instance such an excuse ex-

isted; for neither a complete transcript of the record, nor sufficient abstracts of it, could have been filed in this court fifteen days before the March term, 1904, as the bill of exceptions could not be obtained from the stenographer of the circuit court in time. The statute was construed, as the plaintiff's counsel say, in the cases cited. But we call attention to later decisions of the Supreme Court holding that, when time after judgment is granted for filling a bill of exceptions, the date it is filed will be treated as the date of the judgment appealed from, in determing whether or not the appellant perfected his appeal to the term of the appellate court ensuing sixty days after the appeal was taken. Cunningham v. Roush, 141 Mo. 640, 43 S. W. 161; Land & Inv. Co. v. Martin, 125 Mo. 117, 28 S. W. 434. It is our duty to conform to the Supreme Court's interpretation of the law, instead of following the prior decisions of this court. Those Supreme Court cases have never been overruled and stand, therefore, as expounding the intention of the statute. At the October term, 1901, the Supreme Court adopted a rule that an appeal to that court must be perfected, to the extent of filing a certificate of judgment, in sixty days after it is granted, instead of sixty days after the bill of exceptions is filed. We have adopted no such rule of practice, but have followed the decisions of the Supreme Court. It is impossible in many cases, in which time after the judgment term is given for filing a bill of exceptions, for an appeal to be perfected to the term of this court coming on sixty days after the appeal is allowed. The present appeal was perfected in time according to the rule of practice we have adhered to since the Supreme Court decisions mentioned. Therefore, it would be unjust to hold this appellant is in default.

2. (a) It is asserted that the petition stated no cause of action against the Continental Casualty Company. The petition charged that the policy was issued by the Railroad Officials and Employees Association, with

averments regarding other matters essential to the case, and then averred that the Casualty Company, prior to the accident and for a valuable consideration, had assumed liability to the plaintiff for the amount due by the terms of the policy and, therefore, was liable with its codefendant, the Railway Officials and Employees Accident Association. The only attack made on the petition was by objecting to the reception of evidence. Surely it stated a case good against that objection. Young v. Iron Co., 103 Mo. 324, 15 S. W. 771. The petition averred the Casualty Company had bound itself, for a consideration, to discharge the liability of the association to plaintiff, provided plaintiff's injury was covered by the policy. Hence the inaccurate expression in the instruction for the plaintiff, that, "if the Casualty Company issued the policy," etc., was harmless.

(b)   It is said the petition alleged the Casualty Company assumed and agreed to pay any liability to plaintiff, and that this allegation remained unproved. The proof was that the Casualty Company succeeded to the liability of the Railway Officials and Employees Accident Association on the policy. The essence of the case stated is that the Casualty Company made itself answerable on the policy; and this was established. At most, there was a variance between the petition and the proof as to the mode in which the Casualty Company became bound; not a total failure to prove the allegation in its entire scope and meaning. No effort was made to take advantage of the variance in the statutory way; therefore, it was cured by verdict. Mellor v. Railroad, 105 Mo. 455, 16 S. W. 849.

(c)   It is argued that the allegation of an assumption by the Casualty Company, of the obligations of the Accident Association, showed an agreement within the Statute of Frauds—an undertaking by a party to answer for the debts of another. The petition contains no averment that the Casualty Company's assumption was verbal; and if a writing was essential to the validity of the

assumption, it would be presumed, in support of the petition, to have been written.   Van Idour v. Webb & Aylor, 60 Mo. App. 523.   Besides, the Statute of Frauds was not pleaded as a defense.   Gist v. Eubank, 29 Mo. 248.

3.   The policy says all statements in the notice of the accident, or the proofs of loss, shall be conclusive against the claimant as to the truth of the matters stated.   In his statement concerning the accident, the plaintiff said he quit work November 15th, eight days after the accident occurred; and it is insisted that by virtue of the terms of the policy just mentioned, this answer compels the ruling that plaintiff was not immediately and totally disabled.   The answer may have been given artlessly, the plaintiff meaning that he laid off from his employment as brakeman on the date stated.   The jury might well have believed that was his meaning, as the facts made it probable.   In the reports of the physicians who attended the plaintiff, which reports the defendant demanded as part of the proofs of loss, the physicians answered affirmatively the question propounded by the company, whether plaintiff's injury immediately, continuously and totally disabled him from the prosecution of any and every kind of business.   The plaintiff himself was not asked the same question, but merely when he quit work; and his answer to the latter inquiry, however conclusive it may be as to the fact stated, cannot be stretched into an explicit denial that he was immediately and totally disabled, so binding as to preclude attention to other evidence bearing on the issue.   The answer is one circumstance to be weighed in determining when, if ever, he was wholly unable to work or do business.   Such statements by the insured must be fairly treated in connection with the other facts; particularly the other facts stated in the proofs of loss.   No strained construction ought to be adopted.   Proofs of loss are exacted to enable the insurance company to determine whether the facts of an accident were such that it ought

to indemnify the insured.  We apprehend that the purpose of binding the insured by the representations contained in the proofs, is to compel him to abide by the facts on which the company decides the question of its responsibility, so that it cannot be thrown into costs by a judgment against it given on proof of different facts. At any rate, that is one purpose and the one relevant to the point in hand.  Now the plaintiff's answer that he quit work on November 15th, could not have led the Casualty Company to believe there was no ground to claim immediate and total disability, when it had before it the statements of the physicians, given in answer to a direct question, that total disability existed from the time the injury was received.  The proofs of loss, taken as a whole, were consistent with the belief that plaintiff was immediately and totally disabled to perform work or business, and were not bound to produce a belief to the contrary in the minds of the defendant's officers.

4.  We are pointed to the clause at the foot of plaintiff's statement regarding the accident that he warranted what he said to be true and agreed to forfeit all rights under the policy if it was false.  The argument is that if he was totally disabled on November 7th, and falsely said he was able to work until the 15th, a forfeiture arose by virtue of the warranty.  What is said in the preceding paragraph applies here.  The plaintiff said he quit work on the 15th, the date when he ceased to go with his train.  He did not say he was able to work until then.  We doubt if this warranty, given after the injury, rests on a consideraion; but if it does, its manifest purpose was to keep down fraudulent representations, designed to impose on the company and procure an unmerited indemnity.  It was never intended to provide that an erroneous statement, innocently made by a claimant against his own interest, should forfeit his rights.

5.  Certain facts in proof are pointed to as decisive against the averment that the plaintiff was immediately

and totally disabled and as demonstrating that a verdict for the defendant should have been directed. These facts are that the plaintiff accompanied his train on two runs subsequent to the accident and before going to the hospital, and that after he went to the hospital, he occasionally visited his farm, gave instructions to the man in charge and, on one occasion, lent a hand in the performance of a trivial task. The argument regarding the two train trips he took is this: The policy excludes liability on the part of the defendant if the plaintiff, after receiving the injury, was able to perform any work, labor, business or service *or any part thereof;* it was part of plaintiff's duties as brakeman to go with his train ;he went with it on two runs after the accident; therefore, he was neither immediately nor totally disabled. The first and third of the refused instructions requested by the defendant, if analyzed, will be found to rest on reasoning like the above. Looking at the question in the light of experience and from a practical point of view, one would say the argument that the plaintiff's disability was not total, merely because he could accompany his train, is specious. The evidence shows, without contradiction, that the plaintiff did no work on the trip and that all his duties were performed by Neal, whom he hired as a substitute. Plaintiff's service for the railroad company during the eight days after the accident, before he formally laid off from work, was nominal. One might sit on a train if stricken with palsy, but be entirely disabled to act as brakeman. It is a fair inference from the facts that the plaintiff hesitated to request a furlough from train work until November 15th, because he was unaware of the severity of his injury and expected to be fit for duty in a few days. The wish to prove always equal to his part and fear of discommoding his employer, might, and doubtless sometimes does, influence a workman to postpone asking sick leave when he needs it and is wholly unfit for service in any real sense. The fact that a person sticks to his post is not

always and necessarily conclusive that he was able for duty. In peace and war men have been known to do so when dying, and historic instances of the kind will be called to mind by the reader. No one would say that in such cases the sufferers were not totally disabled for duty, though in fact they persisted in the performance of duty.

Similar reflections are pertinent, from a practical standpoint, to the contention put forward regarding what plaintiff did at his farm while under leave of absence from railway work. He went to the farm now and then and gave instructions, as he did when in railroad service. Once when his farm hands were assorting strawberries, he sat with them at the table and assisted. These circumstances were made the basis of a request that if the jury believed plaintiff was able to perform any duties or labor on his farm during the time for which he claimed indemity, the verdict should be for defendant. At most he should be refused redress only for the time he was able to do duty on the farm, not entirely. But we apprehend that no farmer would treat seriously the assignment that such acts on the part of plaintiff showed beyond dispute that he was not totally disabled to perform farm work.

The plaintiff, despite his injury, possibly may have been able to work as brakeman, farmer or in some other occupation, and this brings up the legal question of what is meant by immediate and total disability, and the accompanying clauses in contracts like the one before us. A lack of breadth and precision of statement is noticeable in judicial opinions treating the subject, due in a measure to the necessity of attending in each case to the particular wording of the instrument construed, but partly, we think, to not keeping in mind the essential purpose of contracts of accident insurance. 4 Joyce, Insurance, 3021. We have lingered over the present case and the authorities bearing on it, in the hope of detecting a criterion of what constitutes total disability which will

realize the main purpose for which the insurance agreement was made, without nullifying any of its terms or clashing with common sense. The primary object of an agreement exerts a potent influence on the meaning to be attached to its several terms, because it is presumed, unless the contrary appears, that the parties intended every term to aid, not to frustrate, the attainment of their object. This rule is to be applied in subordination to the one that the language of a clause will not be wrested from its true meaning in order to make it consist with other clauses. But if the language used is susceptible of an interpretation consonant to the general intention of the agreement, and a literal interpretation would defeat the intention, the former will be preferred. The first inquiry, therefore, on this branch of the case, relates to the purpose for which the policy of insurance was taken by the plaintiff and, presumably, issued by the defendant. The purpose was to provide indemnity for the plaintiff if he should sustain loss of time in consequence of an accidental injury—that is, be prevented by such an injury from using his time so as to derive income from it. In other words, the agreement contemplated an indemnity to the plaintiff if, by an accidental injury, his ability to earn money should be suspended. Our opinion is that the event on the occurrence of which the parties understood the right to indemnity for loss of time should accrue, was a temporary destruction of plaintiff's power to earn money by personal exertions. Experience teaches that in most instances, the incentive influencing men to take accident insurance, is to provide means of support during periods of idleness, enforced by injury or illness, when their earnings stop. Therefore, generally speaking, an insured party ought to be compensated when his income from personal exertions ceases because of the occurrence of the misfortune insured against. Accepting this as the essential intention of the agreement in hand, we will inquire if the several stipulations can be construed so as to give effect to it.    All the stipula-

Wall v. Casualty Co.

tions cannot be, if taken literally, as defendant's counsel insist they should be. The policy reads that the plaintiff, to become entitled to indemnity for loss of time, must be disabled by external, violent and accidential means "from doing or performing any work, labor, business or service, or any part thereof." Under that language, in its extreme significance, the plaintiff could obtain nothing for an injury so severe as to prevent him from following any business for which nature or experience had fitted him, if it would not hinder him in the performance of some other work or business for which he had neither aptitude nor training. Such an interpretation of the contract looks to be incompatible with its purpose to provide indemnity for loss of time. It might be contended plausibly that, as the plaintiff was insured as a brakeman and by a railway accident association, the disability stipulated related to his duties as brakeman and was immediate and total if it prevented him from pursuing that employment. We have found cases wherein indemnity was granted the insured because he was accidentally disabled to follow his usual vocation, though the language of the policy did not thus restrict the disability to be indemnified. Gordon v. Casualty Co., 71 S. W. (Tenn. Ch.) 98; Neil v. United Friends, 78 Hun 255; Pennington v. Ins. Co., 85 Iowa 469; Benevolent Association v. Nancarrow, 71 Pac. 423. On the contrary, authorities, and perhaps the most of them, hold that policies employing broad language like the one in hand, do not agree to indemnify if an injury leaves the insured fit to do anything else than his regular employment; and especially if he actually does something else. 4 Joyce, Insurance, sec. 3032; 2 Bacon, Benevolent Association (3 Ed.), sec. 395a.; Hutchinson v. Supreme Tent etc., Assn., 68 Hun 355, 22 N. Y. Sup. 801; Same Order v. King, 79 Ill. App. 145; Lyon v. Baltimore, etc., Assn., 46 Iowa 631; Railroad Co. v. Post, 122 Pa. St. 597; Albert v. Chosen Friends, 34 Fed. 721. Many policies agree to pay indemnity when an accidental hurt compels

cessation from the regular employment of the insured; and, of course, such instruments are easier to understand than this one, which contains sweeping language regarding the disability contemplated. It should be enforced according to its meaning, fairly interpreted. But to interpret it fairly, or even rationally, some influence must be allowed, not only to the purpose for which it was written, but to the plaintiff's qualifications for work and business, his experience, previous pursuits and natural aptitudes. It never could have been the understanding of the parties that the plaintiff should get nothing from the company, if accidentally disabled to do anything he knew how to do, because, perchance, there were occupations which he might have worked at if he had understood them. When the language of the policy is the broadest, it is used with reference to the lot in life of the insured, his vocation and capacity. If this truth is not recognized in enforcing these contracts, absurd results will ensue. We suppose no court would tolerate the proposition that, if the plaintiff was totally unfitted for his accustomed employment, he should be refused redress, because the injury would not have hindered him from sewing as a tailor, practicing as a lawyer or physician, serving as a bank president or dictating as an author. There are remarks in the opinion in Lyon v. Assn. 46 Iowa, 631, inconsistent with these views; but in point of fact that plaintiff was a carpenter and was able, after the accident, to do any work of his trade except roofing. Decisions cited below support what we have said. The rule observed in allowing damages for breach of a contract suggests a principle to guide in affixing a meaning to the words "total disability" in accident policies. That rule is that such damages shall be awarded as may be supposed to have been in the contemplation of both parties when they made the contract, as the probable result of a breach of it. Hadley v. Baxendale, 9 Exch. 341. The reasoning which supports that doctrine is applicable here. We may say that if the plaintiff was disabled to

do such work as, considering his ordinary employment, qualifications for affairs and station in life, could have been expected of him, he was totally disabled within the meaning of the policy. McMahon v. Chosen Friends, 54 Mo. App. 468; Hutchinson v. Knights Maccabees, 68 Hun. 355; Walcot v. Accident Assn., 8 N. Y. Supp. 263; Gordon v. Casalty Co., 54 S. W. 98. Those decisions maintain the theory that the capacity, experience and usual pursuits of the insured, are to be considered in order to ascertain the degree of disability following an accidential injury, for which policies like the one in hand provide indemnity. The only work it is asserted the plaintiff could or ought to have done during any of the period for which he demands indemnity was as brakeman or farmer. We grant that if he was able to work as brakeman during the week subsequent to the accident, he was neither immediately nor totally disabled within the meaning of the policy. That is the only time during which it is contended he was not disabled in that capacity. Nor is he entitled to indemnity for any part of the time he was under treatment, when he was able to exert himself in his farming business so efficiently that it cannot be said fairly his time was lost.

Plaintiff's ability to put in his time at either train work or farming was for the jury to pass on unless there are conclusive facts. The facts supposed to be conclusive against his claim of total and immediate disability have been stated. They are, going with his train on two runs, giving directions about his farm and performing one trivial act of labor. The contention that these incidents must defeat him is based on the term of the policy, requiring, as the condition of indemnity, disability for work, labor, service or business "or any part thereof." The evidence goes to show that though plaintiff received wages from the railroad company for the week from the seventh to the fifteenth of November, he was not able to earn wages by his own labor, but only by hiring a substitute to labor for him. It may be that his injury did

not hinder him from working and that the employment of a substitute was unnecessary. But if his condition was such that he could not perform his train duties, and either was forced to get a substitute or notify the railway company and let it get one, he was totally disabled for work as brakeman, unless merely going on runs was sufficient, as a performance of part of his duty, to demonstrate that his disability was not total. The attention he gave to farming while off duty as brakeman was no more than he gave when on duty, seems to have yielded no extra income and surely cannot be held to disprove loss of time or total disability as a matter of law. The construction of the policy for which the defendant contends would nullify it as an insurance contract. The indemnity is not payable if the insured suffered a fatal accident, and comparatively few accidents which are not fatal, render a person utterly helpless. But was the disability such that plaintiff's earning power was destroyed? That we regard as the true test of total disability. That an injured party may be able to do chores or casual business acts does not prevent a recovery on an accident policy, according to well considered decisions. Walcot v. Assn., 8 N. Y. Supp. 263; Sawyer v. Id., 8 Am. L. Reg. n. s. 233; Mutual Benevolent Association v. Nancarrow, 71 Pac. 423; Thayer v. Standard Co., 68 N. H. 577; Hooper v. Acc. Death Co., 5 Hurlst. & N. 545; Hohn v. Casualty Co., 115 Mich. 79; Turner v. Fidelity Co., 112 Mich. 425; Lobdill v. Laboring Men's etc. Assn. 69 Minn. 14; Young v. Ins. Co., 80 Me. 245; Neafie v. Manufacturing Co., 55 Hun. Ill. On the other hand a party badly injured, but still able to carry on business or work, so that his time is not lost, is denied relief as for total disability. Knapp v. Acc. Assn., 6 N. Y. Supp. 57; U. S., etc., Assn. v. Millard, 43 Ill. App. 148. An examination of the cases we have cited will develop in the reader's mind the rules according to which the courts deny and grant recoveries in cases of this character. We think the underlying principle that ought to dominate the decision

of the present case, in view of the language of the policy, is that the plaintiff is entitled to indemnity for disability due to the injury, provided loss of earning power ensued immediately after the injury and was total. In truth, the defendant put that interpretation on the contract by interrogating the physicians as to whether the injury immediately, continuously and totally disabled the plaintiff from the prosecution of any and every kind of labor and business. The use of the word "prosecution" indicates that the defendant understood ability to do casual acts of work or business which yielded no income, would not deprive plaintiff of the right to indemnity. It was remarked in some of the cases cited above, that total disability does not mean absolute helplessness, death, insanity, or other states which preclude all mental and physical activity. Generally speaking the law treats loss of time synonymous with loss of those earnings which accrue from employing time in labor or business.

As far as plaintiff's ability for train work is concerned, "immediate disability" and "total disability" have the same force. It is conceded that plaintiff was unable to perform the duties of brakeman after he went to the hospital on November 15th, and if he was able between that date and the date of the accident, he was neither immediately nor totally disabled. We have sufficiently discussed total disability. The word "immediately" is held to mean within a reasonable or practicable time, when employed in a stipulation requiring a party to perform some act. Time is consumed in doing any act, however diligent the doer may be. But total disability may follow an injury instantaneously. Therefore, "immediately" in stipulations relating to disability following an accident, signifies presently, or on the happening of the accident. The word is introduced to prevent uncertainty as to the cause of the disability. If an interval elapses, some obscure ailment may supervene

and produce physical or mental enfeeblement, which will be attributed to the accident, and an unjust liability fall on the insurance company. If eight days passed before the plaintiff was unfit for work or business, he was not immediately disabled within the meaning of the policy. Preferred, etc., Co. v. Jones, 60 Ill. App. 106; Williams v. Acc. Assn., 91 Ga. 698; Merrill v. Id., 91 Wis. 329.

6. We will now examine the instructions. No fault is found by the defendant with the one given for the plaintiff, except that it proceeded on the assumption that the Casualty Company issued the policy. This mistake has been considered and held not to have prejudiced the defendant. The second instruction requested by the defendant was given as asked, and in a form too favorable to defendant. It denied the plaintiff a recovery if he was able, after the accident, to perform any of his duties as brakeman. Defendant's first instruction, as given, told the jury that if plaintiff, from November 7th to November 15, 1901, continued in the service of the railroad company and performed the duties of brakeman, they must find for the defendant. The defendant has no cause to complain of that charge. It is the law that if the plaintiff was able to perform the duties of brakeman for eight days after the accident, his case must fail. But the complaint is that the court struck out "or any part of the duties." This point comes up, too, in considering the first three of the refused instructions, of which the first asserted the proposition that if the plaintiff was able to go on his runs until November 15th, he could not recover; the second, that if he was able at any time, while injured, to do any work or perform any duty on his farm, he could not recover, and the third, that if he went on his runs as brakeman until November 15th, and was paid wages during that time, he could not recover. His receipt of wages does not cut him off from indemnity; for the evidence tends to show he was compelled to hire some one else to work in his place—was disabled to earn wages and only did so by proxy. Our

view concerning the vice of these instructions has been indicated. They denied plaintiff relief if he performed the least act as a brakeman, though so disabled as to lose entirely the value of his time. We hold that he was entitled to indemnity if his disability was such that he was unable to earn anything by his own work. The instructions did not express that idea and hence were properly refused. They proceeded on the extreme theory that doing anything showed, *ipso facto,* that he was not totally disabled; an incorrect interpretation of the contract according to the adjudged cases. The instruction submitting the defense of work or labor on plaintiff's farm contained the same fault. He was to be refused relief if able to do any farm work or duty. If plaintiff could have made a hand on his farm while he was unfit for railroad work, the case would be different. But there was no evidence that he was able to perform farm duties so as to make good, in any measure, what he lost as brakeman.

7. Complaint is made that the court, during the argument, amended the first instruction asked by the defendant without allowing defendant's counsel sufficient time to argue the case after the change. Counsel saved no exception, so far as the record discloses, to the time allowed them for argument after the instruction was altered. On the hearing of the motion for new trial, oral evidence was received as to the time given to argue after the instruction was altered. This testimony shows no ground for reversing the judgment. If the defendant's counsel wished to save a point in regard to the time allowed for argument, they should have objected and excepted when the ruling was made.

We have thus gone over the various points raised on the appeal and conclude there was no reversible error committed at the trial of the cause. The judgment is, therefore, affirmed. All concur.