STARLING *v.* SUPREME COUNCIL ROYAL TEMPLARS OF
TEMPERANCE.

1. MUTUAL BENEFIT ASSOCIATIONS — CHANGE OF CERTIFICATE—
CONSENT OF MEMBER.

A mutual benefit society which issues a certificate to a member
providing for payment in case of total disability resulting
from a specified cause cannot, without his express consent,
change his contract by the adoption of a by-law excluding such
cause of disability, although the member has agreed in his cer-
tificate to observe "all the laws, rules, and regulations of the
society."

2. SAME—LOSS OF MEMBERSHIP.

A member of an order which is social as well as beneficiary,
whose lodge is disbanded for lack of members, and whose
transfer card is refused by the other local lodge, is not bound,
in order to retain the benefits conferred by his certificate of
membership, to unite with a foreign lodge, but may send his
assessments direct to the supreme body.

3. SAME—TOTAL DISABILITY—INSTRUCTIONS.

In an action on a certificate of insurance payable in case
of total disability to follow any avocation, an instruction that
the fact that a man may work continuously for a few months
is not conclusive evidence that he can follow some avocation
is not prejudicial to the defendant, where the jury are ex-
plicitly instructed that, if the plaintiff can follow any line of
employment, he cannot recover, and that the question of his
ability to do so is one solely for the jury.

Error to Wayne; Hosmer, J.   Submitted January 28,
1896.   Decided February 26, 1896.

*Assumpsit* by Adolphus F. Starling against the Su-
preme Council of Royal Templars of Temperance upon a
benefit certificate.   There was a judgment for plaintiff, to
review which defendant sued out a writ of error.   Plain-
tiff died pending the hearing on appeal, and the cause was
revived in the name of his administrator, John G. Star-
ling.   Judgment affirmed.

*J. H. Tatem,* for appellant.

*Powell & Johnson,* for appellee.

MOORE, J.    The defendant is a fraternal and mutual benefit association, composed of social and beneficiary members, with a membership of 13,000.    Its beneficiary fund is derived from monthly assessments paid by its members.    The certificate of insurance issued to the plaintiff provides, among other things, that the beneficiary, at the death of the insured, shall be entitled to the sum of $1 from each and every active member in good standing, not to exceed 2,000 members, or if the insured shall become totally disabled for life, so as to prevent his following his own or any other avocation, he shall, upon satisfactory proof of such total disability, be entitled to one-half of the above-mentioned amount, the remaining one-half to be paid at the time of his decease, provided he shall comply with all the laws, rules, and regulations of the order.    On the back of the certificate was indorsed the following:

"Total disability shall consist of the following conditions:

"1.  An injury which shall produce complete, total, and permanent disability from following any avocation.

"2.  Paralysis so extensive as to produce absolute disability to follow any avocation, and which is conclusively permanent.

"3.  Rheumatic or gouty arthritis, followed by permanent anchylosis, so extensive as to produce total disability.

"4.  Entire and hopeless loss of useful vision.

"5.  Hopeless and irremediable insanity."

In July, 1890, the plaintiff was stricken with paralysis, which, he claims, totally disabled him for work, and entitled him to the sum of $1,000, according to the terms of his certificate, and, inasmuch as his claim was not paid, he brought this suit in 1893.

It is claimed, by way of defense, that in 1890, and before this suit was brought, the causes of total disability were reduced to three: (1) Entire and incurable loss of

vision; (2) entire loss of both arms, or both legs; (3) hopeless and incurable insanity,—and that, inasmuch as the plaintiff had agreed to observe the rules and regulations of the order, this change of causes of total disability would prevent his recovery for the total disabilty growing out of the paralysis. It has been held that, where a mutual benefit society issued to a member a certificate of insurance, the subsequent adoption of a by-law by the society could not modify or change the contract of insurance without the express consent of the member. *Grand Lodge A. O. U. W.* v. *Sater*, 44 Mo. App. 445; *Insurance Co.* v. *Connor*, 17 Pa. St. 136; *Becker* v. *Benefit Society*, 144 Pa. St. 232; *Morrison* v. *Insurance Co.*, 59 Wis. 162. To the same effect is *Becker* v. *Insurance Co.*, 48 Mich. 610.

It is also claimed that plaintiff is not entitled to recover, for the reason that, at the time of the commencement of this suit, he was not a member of the order. It seems to be established by the record that plaintiff, who was a resident of Detroit, was a member of Enterprise Council, of Detroit, until it broke up for want of members. He then obtained a transfer card from the supreme council at Buffalo, and deposited it with the North Star Council at Detroit. It was refused by that council. It is claimed by the defendant that, if the Detroit councils refused to receive him, he was under obligations to unite with a council in Grand Rapids or Buffalo. As this was a social as well as a beneficiary order, such a construction is unreasonable. The plaintiff sent payments of all assessments of which he had notice to the supreme council, at Buffalo, which received them for more than two years after he claims to have become totally disabled. The plaintiff had done all he could, and all he was bound to do, to retain his membership, and was not in fault.

Complaint is made of the charge of the trial judge. The record shows that the avocation of plaintiff was cutting leather in a shoe factory, which required a steady hand; that, after 1890, his condition was such that he

could not longer follow it. There was some testimony that, for a short time in 1892, he had acted as an inspector of sidewalks. After the trial judge had charged the jury properly as to the law, this occurred:

"*Mr. Powell:* May it please the court, your honor has not defined what 'following an avocation' would be. I don't know whether you see fit to do that or not.

"*The Court:* I have not been requested to, in that respect. I will say, on that subject, that following an avocation, perhaps—

"*Mr. Tatem:* It is not a question of law, your honor.

"*The Court:* I think that is so, largely. But I will say this, with reference to that: The fact that a man may carry a bucket of coal, or may carry a stick of wood, or perhaps may run a lawn mower over a lawn, will not, in itself, necessarily show that he is competent to follow some avocation. The fact that a man may work for a few moments, even though, perhaps, he may work for a few months, will not, necessarily,—it is not conclusive evidence that he can follow some avocation. But, if you find that he can perform some kind of employment,—if you find, as suggested by the counsel in this case, that he could keep a newspaper stand, or a peanut stand, or could do any work, or follow any line of employment,— why, then, gentlemen of the jury, under those circumstances, he would not be entitled to recover. But you must remember it is not for me to say what inference shall be drawn from the evidence in this case. You have heard the evidence. It is for you to draw the inference of fact, and not for the court."

The court had fully charged the jury that, to entitle the plaintiff to recover, he must be totally disabled from following any avocation, and he again repeated that charge, and left it entirely for the jury to draw the inference of fact.

The judgment of the court below is affirmed, with costs.

The other Justices concurred.