## STODDARD v. COURTRIGHT.

1. COLLATERAL SECURITY—APPLICATION OF PAYMENTS.
   A statement in a letter by one who has received collateral
   security, that he received it "as a general or blanket secur-
   ity," does not justify the claim that the proceeds of the
   security should be divided and applied *pro rata* to several
   notes, where the letter also states that the proceeds were to
   be applied wherever there should be a deficiency upon any of
   the notes, and that two of the notes were uncollectible, and
   he should therefore apply the proceeds upon those notes.

2. APPEAL—QUESTIONS NOT RAISED BELOW.
   Objections not made on the trial will not be considered in the
   Supreme Court.

Error to Bay; Shepard, J. Submitted November 15, 1901. (Docket No. 133.) Decided March 26, 1902.

*Assumpsit* by John L. Stoddard against Morris L. Courtright upon a promissory note. From a judgment for plaintiff, defendant brings error. Affirmed.

*McDonell & Duffy*, for appellant.

*John L. Stoddard, in pro. per.*

MOORE, J. For some time prior to 1887, Edward C. Hargrave and his father, Edward J. Hargrave, owned mill property at Bay City, and were engaged in the business of manufacturing lumber and salt. The business was carried on in the name of E. J. Hargrave & Son. The father died in 1887. It is the claim of defendant that, after the death of Edward J. Hargrave, Elizabeth W. Hargrave, the widow of E. J. Hargrave, and Edward C. Hargrave, continued the business together under the old firm name of E. J. Hargrave & Son, until the firm failed in January, 1896. In the fall of 1895 Mrs. Hargrave went to England; and it is the claim of the plaintiff that the business was the business of Edward C. Hargrave alone, carried on in the name of E. J. Hargrave & Son. Mr. Edward C. Hargrave, in 1891, organized the E. C. Hargrave & Co., a corporation, at Hinkley, N. Y., which carried on the business of manufacturing lumber and sulphate fiber at that place. In this corporation Mr. Edward C. Hargrave was a large stockholder, owning $350,000 out of the $400,000 capital stock, all of which was paid up.

The several loans involved in this case were made by plaintiff, Stoddard, as follows: Early in 1893, viz., upon February 10, 1893, Edward C. Hargrave borrowed from the plaintiff, Stoddard, the sum of $3,000, giving his personal note, and transferring as collateral security a real-estate mortgage and accompanying notes amounting to $3,000, running from Francis G. Fitch to Edward C.

Hargrave, and also a lease, running for a period of five years, for the use of all of the railroads and booms connected with said property. Fitch subsequently paid one of these notes, which was applied on the note, reducing this loan from $3,000 to $2,500. Upon September 1, 1893, another loan of $1,000 was made. The note representing this loan was indorsed by Mr. Courtright. It is claimed by plaintiff both of these loans were made to E. C. Hargrave. It is the claim of defendant they were made to E. J. Hargrave & Son.

Upon October·2, 1893, plaintiff, Stoddard, made another loan of $5,481.63, and upon January 5, 1894, another of $1,000. Mr. Stoddard testifies that the two amounts were brought together in some way, and, together with some additional items, made up the sum of $7,000, for which he took two notes, of $5,000 and $2,000, respectively, of Patton & Co., the originals being taken up, the last renewals being dated October 31, 1895, and are for $5,000 and $2,000, respectively, made by Patton & Co., of Albany, N. Y., to the Trenton Falls Lumber Company, and indorsed by E. C. Hargrave & Co., the New York corporation, and by Edward C. Hargrave personally.

Upon May 8, 1895, Mr. Stoddard took the note of E. J. Hargrave & Son, dated May 8, 1895, for $1,000, due in four months. This note was secured by a certificate of stock in the E. C. Hargrave & Co. corporation.

Patton & Co. failed in the latter part of 1895, carrying down with it the Trenton Falls Lumber Company and the E. C. Hargrave & Co. corporation in New York, and by reason of these failures E. J. Hargrave & Son, of Bay City, came into financial difficulties. These various loans had been renewed from° time to time. Whatever may be said as to whom these moneys were loaned or for whom they were borrowed, in January, 1896, Mr. Stoddard held notes as follows: Notes of E. J. Hargrave & Son: One note secured by the Fitch real-estate mortgage, $2,500; one note indorsed by Morris L. Courtright, $1,000; one note secured by certificate of stock in the E. C. Hargrave

& Co. corporation, $1,000.   Notes of Patton & Co.:   One note, $5,000; one note, $2,000.   The last two notes were made to the Trenton Falls Lumber Company and indorsed by them.   They also bore the indorsement of E. C. Hargrave & Co. and Edward C. Hargrave personally.

In January, 1896, Mr. Stoddard first learned of the financial difficulties of the above concerns, and claims that a few days after January 1, 1896, he saw Mr. Hargrave at Mr. Stoddard's office in Bay City, and that Mr. Hargrave told Mr. Stoddard of the claim against Fitch, which he (Hargrave) agreed to turn over to Mr. Stoddard, but that nothing was done about it then.   Within a day or two prior to January 17, 1896, Mr. Stoddard went to the office of M. L. Courtright, who was the attorney for E. J. Hargrave & Son, and, after a talk with the latter, it was decided that Mr. Courtright, acting for E. J. Hargrave & Son, would turn over to Mr. Stoddard an assignment of the Fitch claim before mentioned, together with an assignment of a certain chattel mortgage on file December 6, 1893, made by Fitch *et al.* to E. C. Hargrave. An assignment was made, reading as follows:

"For value received, we hereby sell, assign, and transfer to John L. Stoddard our claim and accounts against the Fitch Salt Company, together with a certain chattel mortgage given by the said company to us, bearing date December 5, 1893, and now on file in the office of the recorder of Bay City, Michigan.

"Dated this 18th day of January, 1896.
"E. J. HARGRAVE & SON,
"By M. L. COURTRIGHT."

It is claimed Mr. E. C. Hargrave afterwards ratified this assignment.   The chattel mortgage was afterwards discharged, and a new one made by the Fitch Salt Company direct to Mr. Stoddard.

May 27, 1896, the following paper was given:

"BAY CITY, MICH., May 27, 1896.
"One day after date, without grace, for value received, I promise to pay to the order of J. L. Stoddard ten thousand seven hundred eighty dollars and eighty cents ($10,780.80),

with interest from date at eight per cent. per annum, payable quarterly until paid.

"This note is collateral to the following, viz.: One note for two thousand dollars ($2,000), dated October 31, 1895, and made by Patton & Co., and indorsed by the Trenton Falls Lumber Company, E. C. Hargrave & Co., and Edward C. Hargrave; a note for five thousand dollars ($5,-000), of same date as above, and made and indorsed the same as last above note; a note for one thousand dollars ($1,000), made by E. J. Hargrave & Son, dated September 11, 1895; a note for two thousand five hundred dollars ($2,500), made by E. J. Hargrave & Son, dated September 16, 1895,—all of which notes are now held by said Stoddard.          E. C. HARGRAVE."

It will be observed the note of $1,000 indorsed by Mr. Courtright is not mentioned in this paper, and it is claimed by plaintiff that the proceeds of the securities which he held were to be applied on any or all of the notes described in the agreement, as in his judgment it would be to his advantage to apply them, and that none of them were to be applied on the note indorsed by Courtright. It is the claim of Mr. Hargrave that he did not notice the Courtright note was not included in the paper he signed. This claim of plaintiff as to the application of the proceeds of the securities is denied by defendant and by Mr. Edward C. Hargrave, who wrote plaintiff October 5, 1898, as follows:

"This firm owes you for three notes, one for $2,500 and two for $1,000 each, besides interest upon the same. One of the $1,000 notes is indorsed by M. L. Courtright. You hold for security for the above a real-estate mortgage for $2,400 and an assignment of an account due us from E. S. Fitch. We understand you are about to receive some money on the Fitch account. Any money you may receive on the Fitch account apply as follows: Apply all that you may receive on the note indorsed by Mr. Courtright until it is paid. After the Courtright indorsement —that is, the note indorsed by him—is paid, apply all the money you may receive on the other $1,000 note until it is paid, and the balance you may apply on the $2,500 note."

As early as in November, 1899, there was realized from

the property covered by the real-estate and chattel mortgages more than the amount of the notes of E. J. Hargrave & Son, which amounts were indorsed on the $10,780.80 note. After considerable correspondence, this suit was brought to recover on the $1,000 note indorsed by defendant.

It was the claim of the plaintiff upon the trial of the case that Edward C. Hargrave was in reality E. J. Hargrave & Son; that the indebtedness was his personal indebtedness; that the Fitch real-estate mortgage was his; that the Fitch account and chattel mortgage were his, and that, therefore, the moneys realized from those securities were his; that, while no agreement was had between himself and Mr. Hargrave, at the time the securities were turned out to him, as to the application of the proceeds, such an agreement was had upon May 27, 1896, when Mr. Hargrave made the note for $10,780.80, representing all of the paper which plaintiff held except the $1,000 note of E. J. Hargrave & Son upon which Mr. Courtright was an indorser, and consented that the entire amount realized from the Fitch assets should be credited upon this note. It was the further claim of plaintiff that Mr. Courtright consented to this arrangement, and thereby waived the benefit of the security which had been given for the E. J. Hargrave & Son paper upon which Mr. Courtright was an indorser, and therefore plaintiff was entitled to recover from the defendant the amount of the E. J. Hargrave & Son note which he had indorsed.

The defendant, on the other hand, denied any such arrangement, or any knowledge thereof, and claimed that the indebtedness was the indebtedness of E. J. Hargrave & Son; that the assets were the assets of E. J. Hargrave & Son, and that he was entitled to have the assets of E. J. Hargrave & Son applied to the debts of E. J. Hargrave & Son until that indebtedness was wiped out; that the uncontradicted testimony showed that the assets were more than enough to pay the indebtedness, and that, therefore, the note of E. J. Hargrave & Son for $1,000, upon

which he was an indorser, was paid; that he never knew of or consented to any arrangement whereby he should waive the benefit of the security which had been turned out to plaintiff to secure the indebtedness of E. J. Hargrave & Son; that no such arrangement existed in fact; and it was contended in his behalf that plaintiff, by his dealings and actions, was estopped from claiming that any such arrangement existed.

The jury brought in a verdict in favor of the plaintiff and against the defendant for $905.50. The case is brought here by writ of error.

The law applicable to the case is not at all complicated. The trouble arises out of the proper disposition of the questions of fact. The record is very long. The testimony was conflicting. The charge was very full. Those portions of it which may perhaps be justly criticised are where the judge expressed his opinion that the business of E. J. Hargrave & Son was not the business of Mr. Edward C. Hargrave alone, but that there was associated with him either his mother or brother. But, if this was error, it was in favor of defendant. It is said that after the jury had been out for a time, and were recalled, what then occurred misled the jury. We do not get that impression from a careful reading of the record.

In one of the letters from Mr. Stoddard to Mr. Hargrave the following language is used:

"I have been looking over my papers since writing the letter of yesterday, however, and, while the statement that I made in the letter yesterday as to the Fitch matter being received as security to the notes of $5,000 and $2,000, respectively, is not literally true, it is true in effect. I find that the exact understanding was that the Fitch matter was transferred to and received by me as a general or blanket security, and the proceeds to be by me applied wherever there should be a deficiency upon any of the several notes aggregating $11,500 that I held, with the right on my part to apply payments, if I chose to do so, to cover items of interest or discount due me. It is absolutely certain that the parties to the $5,000 note and $2,000 note mentioned are uncollectible, and therefore I shall, as

I said, apply the net amount that I may receive from the Fitch matter upon those notes."

It is said that, in any event, "under the blanket security theory," the proceeds should have been divided, part of it being applied to the Courtright note. The contents of the letter, taken as a whole, do not justify that claim. No such theory was advanced upon the trial. See *John Hutchison Manfg. Co.* v. *Pinch*, 107 Mich. 12 (64 N. W. 729, 66 N. W. 340); *Little* v. *Williams*, 107 Mich. 652 (65 N. W. 568); *Wolf* v. *Holton*, 110 Mich. 166 (67 N. W. 1082). The testimony was contradictory. The charge presented the conflicting theories of the parties in such a way that the defendant, at least, is not in a position to complain. The jury found the version of the transaction claimed by the plaintiff to be true.

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.