RICHARD YOUNG, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.—84 S. W. (2d) 1065.

Springfield Court of Appeals. June 27, 1935.

Rehearing denied, July 26, 1935.

*Fordyce, White, Mayne & Williams, R. E. Ladriere, Edgar & Banta* and *LeRoy A. Lincoln* for appellant.

*Davis & Damron* and *L. W. Chapman* for respondent.

BAILEY, J.—This is a suit to recover certain benefits provided in the total disability clause contained in a group life insurance policy issued by defendant to the St. Joseph Lead Company by which certain employees of said Lead Company were insured. Plaintiff is a former employee of the Lead Company.

In his petition, after setting out the terms of the policy, plaintiff alleges among other things that on the 10th day of February, 1932, and long prior thereto, while said insurance was in force and at a time when he was employed by the St. Joseph Lead Company, he was afflicted with certain ailments and diseases in the petition described, as a result of which he was and is totally, permanently and continuously disabled and wholly prevented from performing any work for

compensation or profit; that he became so disabled before attaining the age of sixty years; that he completed due proof of said disability on June 17, 1932; that defendant rejected said proof and refused to pay plaintiff the amount due under said policy; that there is now due eleven monthly installments of $44.92 each, or a total of $494.12, which upon demand defendant has refused to pay, for which judgment is prayed.

Defendant filed a demurrer to the petition on the ground that the petition showed upon its face that the trial court had no jurisdiction, the theory being that but one installment was due at the time suit was filed which was below the jurisdiction of the court. This demurrer was overruled. Defendant thereupon filed an answer denying that plaintiff was totally and permanently disabled while employed by the St. Joseph Lead Company and while the insurance was in force; that if he was totally and permanently disabled, such disability arose after plaintiff's employment ceased. The answer further contained a denial that due proof had been made as required by the policy.

Plaintiff filed a reply denying generally the allegations of the answer, and alleged further that since the filing of the suit defendant had become indebted to plaintiff for eight additional installments for which judgment was prayed. Defendant's motion to strike the reply was overruled.

On trial to a jury the issues were found for plaintiff and his damages were assessed at the sum of $44.92 each month for ninety-one months, or a total of $4,087.72, and judgment was rendered accordingly. Motion for new trial was filed and thereafter plaintiff filed a *remittitur* of $3,279.16, and moved the court to enter judgment in the sum of $808.56. The trial court, after setting aside the original judgment, entered judgment in accordance with plaintiff's motion. Defendant has appealed to this court.

Defendant assigns error in the failure of the trial court to sustain its demurrer to the evidence offered at the close of plaintiff's case and again at the close of the whole case, for the following alleged reasons:

"(a) The evidence failed to show that plaintiff was totally and permanently disabled on February 27, 1932, the date his employment with the Lead Company ceased, and the date the insurance as to him terminated.

"(b) The proofs of disability submitted were not sufficient to reasonably convince the Insurance Company that liability for payment under the policy did in fact exist.

"(c) The evidence discloses that such proof of disability as was made was not completed until about October 24th or 25th, 1932, and since monthly payments were to commence six months after receipt of due proof at the home office of the Insurance Company in New

York, suit having been filed January 11, 1933, was therefore premature."

The first point made reaches the heart of the case which is, whether or not plaintiff produced any substantial evidence that he was permanently and totally disabled under the terms of the insurance contract, entitling him to the benefits therein provided. The policy itself defines such disability, as follows: "Any employee shall be considered as totally and permanently disabled who furnishes due proof that, as the result of bodily injury suffered or disease contracted prior to his sixtieth birthday, he has become, while insured hereunder, permanently, continuously and wholly prevented thereby from performing any work for compensation or profit."

It is conceded that plaintiff remained in the employ of the St. Joseph Lead Company until February 27, 1932, at which time he was "laid off," but never again resumed that employment or any other employment. The testimony on the part of plaintiff shows that he was thirty-three years of age at the time of trial and a man of family; that plaintiff had been employed by said Lead Company since 1923, at first shovelling underground, which work he continued to do until August, 1924, at which time a rock fell upon him breaking his right leg and toe and otherwise injuring him; that he remained in the hospital about six weeks and resumed work for the Lead Company in the spring of 1925, at which time there was an open wound in his leg; that the wound remained open about eight months; that thereafter the wound would open up and heal and then would break open again; that the work he did after his said injuries was a light class clerical job in the supply house issuing stock and material and keeping a record of it; that during the last two years of his employment his leg had a tendency to cause him severe pain and an achy feeling and that the broken toe would give him pain when he walked on it; that the leg pained him when he moved around doing his work; that during the last two years he sat down about half the time in performing his duties; that in 1928 he had pneumonia; that thereafter his health was different in that he had difficulty in breathing and pains in his chest and spells with his heart; that he would have fluttering spells with his heart when he got excited; that he developed rheumatism and hardening of the arteries and that his leg would "pop" when he would turn.

On cross-examination plaintiff testified that his education consisted of a part of the seventh and eighth grades in a country school; that in his work for the St. Joseph Lead Company, he was required to check out supplies and handled the issuing of supplies, cleaning spittoons and sweeping the floor; that he worked at this from 1925, until he was discharged; that when he left the employ of the lead company in 1932, he mentioned the condition of his leg to Mr.

Knowles, employment agent of the company but when asked if that was the reason he quit stated that he was "laid off;" that if the company had continued his employment in his clerical job he would still be trying to work; that if he got to where he could not do the work he would have to quit; that he did not quit in 1932, but was laid off at that time; that during fair weather he felt pretty good but more or less all the time he had a sluggish tired feeling at night; that he did not loose any time on account of this condition during the last two or three months of his employment, or any time at all, and kept up his regular work as much as anybody in the stock room.

Lay witnesses for plaintiff, including his wife, testified in substance that plaintiff told them from time to time about the condition of his leg and the pain and discomfort he suffered; that he had pain in his chest and in his side and that his heart fluttered; and that many times he did not feel like working.

The medical testimony furnished by witnesses C. L. Hyatt (formerly a practicing physician) and Dr. W. T. Rubenstein, was to the effect that in addition to this leg condition, plaintiff had chronic gastro enteritis (inflammation of stomach), appendicitis, chronic endocarditis (inflammation of membrane lining heart cavities) with heart slightly enlarged downward to the left, chronic arthritis (inflammation of joints), as well as an old osteomyelitis of the right leg. In regard to this latter Dr. Rubenstein, who examined plaintiff first April 23, 1932, testified by deposition, as follows:

"Osteomyelitis is an infection involving the marrow of the bone and spreading to the bone structure; that his had impaired the bony structure of his leg by destroying some of the cortex of the bone, consequently plaintiff does not have enough bone structure for support; that this leg condition was examined by witness in April, 1932, and discharging sinuses found, but that there is a depression there showing that an operation was performed on that bone, maybe once and maybe twice, and there is a tenderness over this area and some crepitation on motion around the ankle bone, due to a possible shortening of the leg, and that the muscular tissues about this sore were wasted, and that there is a slight contraction of the muscles. Witness was then asked whether, from the history of the case as given him, he learned how long the plaintiff had had this leg condition; which was objected to as calling for an answer based on the history of the case, which to this witness was hearsay, which was therefore incompetent, irrelevant and immaterial, but the objection was overruled by the court and exception saved by the plaintiff. Witness then stated, 'About four or five years.' In answer to the question whether from the examination made witness could make an estimate as to how long that condition had existed, he stated it was hard to tell—it may

be a year, or maybe more; at least a year, but from the appearance of the disease it was chronic."

The witness further testified that work or exertion would spread the pus from the marrow around the body to the blood stream; that the leg condition was permanent and the only possible cure would be by amputation of the right foot; that the condition of his leg had been acute; that he knew from a history of the case that plaintiff had worked steadily until February, 1932; that from a medical standpoint, "he would not work with conditions plaintiff has and believes they tend to aggravate it." He was then asked, "assuming that the plaintiff had had steady work, when work was available, and his condition existing for four or five years, he would still say that the man is unable to do any work for compensation or profit, and said he could do some slight work, but he would have pain, swelling and aggravation of the heart condition; that it is possible to work some, but with severe pain and suffering. Witness was asked how he found that pain exists, and stated that it is subjective, and when asked whether that was not from definite information of the patient he stated that according to doctors, that is, from medical experience, it was known that the pain of osteomyelitia was severe, because of the bony extension. When asked if that was not hearsay, the doctor stated that is according to the history of the patient. When asked if he wished to state that he could do some light work, but that he would have pain and suffering and swelling of the extremities, and that this would aggravate the bone condition because of pus coming from the infection he replied: 'Yes, and working would spread it through the system.'"

In one of the forms filled in by plaintiff in making out his proof for claim of total and permanent disability, plaintiff stated that he was first totally disabled so that he was wholly unable to work on April 20, 1932.

Witnesses for defendant including the manager and assistant manager of the lead company testified that plaintiff was rated as a cripple; that the job he had was a medium light job; that he worked all the time the plant was operating in 1932, and during the year 1930, 1931, he absolutely worked all the time; that he might have been off for a day or two at times; that the reason plaintiff ceased work was that he was laid off; that the records kept by the office on employees showed that plaintiff was rated good; that in the report of the lead company to defendant in July, 1932, they stated that plaintiff was laid off "on account of reduction in force;" that plaintiff was doing good work and his work was done properly.

The foregoing sufficiently sets forth the evidence, we think, on the question of plaintiff's total and permanent disability. From that evi-

dence it appears that plaintiff was suffering from a progressive disease and injuries that had developed into certain chronic and permanent conditions which existed at the time he ceased his employment with the St. Joseph Lead Company. The evidence tends to show that by reason of those conditions he was totally and permanently disabled so as to be unable to perform any work for profit at the time he was first examined by Dr. Rubenstein in April, 1932, which disability, according to the doctor, had existed for at least one year. The difficulty in this case is to determine whether or not there is sufficient evidence to justify the verdict of a jury in finding that he was totally disabled at the time his employment ceased on February 27, 1932. Plaintiff is confronted with the undisputed fact that he was working at a gainful occupation on February 17, 1932, and had been engaged in such work for almost seven years without material interruption; that his work was satisfactory and he was laid off at that time not because of his physical condition, but on account of reduction in force. Plaintiff takes the position that although he did work at a gainful occupation, he was unable to work at the time he was laid off; that he did light work only, and that he suffered much pain a large part of the time while working; that as a result of such work his various ailments were aggravated and that he was in fact in such condition as to be classed as totally and permanently disabled at the time his employment ceased, notwithstanding the fact that he continued to work in order to try to support his family.

It is our opinion there was sufficient evidence of a substantial character from which a jury would be justified in finding that plaintiff was totally and permanently disabled at the time his employment ceased. The fact that he actually did work for remuneration until the very day he was layed off cannot be taken as an absolute bar to his right of recovery notwithstanding the provision of the policy under discussion. In considering a set of circumstances quite similar to those in this case Judge GOODE, an eminent jurist of this State, said: "The wish to prove equal to his part and fear of discommoding his employer, might, and doubtless sometimes does, influence a workman to postpone asking sick leave when he needs it and is wholly unfit for service in any real sense. The fact that a person sticks to his post is not always and necessarily conclusive that he was able for duty. In peace and war men have been known to do so when dying, and historic instances of the kind will be called to mind by the reader. No one would say that in such cases the sufferers were not totally disabled for duty, though in fact they persisted in the performance of duty." [Wall v. Continental Casualty Co., 11 Mo. App. 504, l. c. 522.]

Similarly, in Fidelity & Co. v. Joiner, 178 S. W. 806 (Tex. Civ.

App.), it was said: "We agreed it conclusively appeared as claimed that the assured, after he suffered the injuries, performed duties pertaining to his occupation, but we do not agree that his doing so established as a matter of law that he was not 'totally disabled' within the meaning of those words as used in the policy. It not infrequently happens that one suffering from injuries to his person performs duties pertaining to his occupation which he is wholly unable, in the reasonable and proper sense of those words so used, to perform, and that as a consequence, because he is unable to do so, he suffers death or an aggravation of his injuries. In a case in which such a result follows a performance of the duty, the performance thereof, instead of establishing that the assured was able to perform it, it seems to us, would establish the contrary. We think therefore that to construe the language in the policy as meaning what appellant contends it means would be unreasonable."

To the same effect are Starling v. Supreme Council, R. T. T., 108 Mich. 440, 66 N. W. 340; Booth v. United States Fidelity & C. Co. (N. J.), 130 Atl. 131. No doubt other authorities might be found to support a proposition so in keeping with human experience. Many good men, at the sacrifice of suffering and misery, wholly unfit to exert themselves in any sort of employment, will work until they drop, out of a sense of obligation to their families and loyalty to their employer. It is not for this court to say, under such circumstances, that an employee is not totally disabled within the reasonable construction of the insurance contract. The medical testimony in this case, from which we have heretofore quoted, indicates that plaintiff was suffering from a complication of diseases which had gradually grown worse. These diseases were of a serious and painful character. He was able to perform his duties, as shown by the evidence, only at the price of intense pain and suffering. The osteoma of the leg, which was progressive, had reached a point where, according to Dr. Rubenstein, there was insufficient bone structure for support of the body. Without repeating the evidence as to plaintiff's other ailments, there can be little doubt that from plaintiff's side of the case, he was in a most serious physical condition long before his employment ceased. The testimony as to his infirmities is stronger than in a number of Missouri cases in which liability based upon total and permanent disability has been upheld. The policy of the Missouri decisions may be said to be liberal in favor of the assured. The theory of such cases is that since the evident intent of the insurance contract is to protect the insured the policy should be given a broad construction so that its purpose will not be destroyed by strictly construing the various terms of the contract. [Kane v. Metropolitan Life Ins. Co., 73 S. W. (2d) 826; Katz v. Union Central Life Ins. Co., 44 S. W. (2d)

250, 226 Mo. App. 618; Hurt v. Equitable Life Ins. Co., 53 S. W. (2d) 1101; Foglesong v. Modern Brotherhood, 121 Mo. App. 548, 97 S. W. 240; James v. Casualty Co., 113 Mo. App. 622, 88 S. W. 125.]

Defendant seems to rely mainly on the case of Boozer v. Equitable Life Ins. Co. (N. C.), 175 S. E. 175. In that case the terms of the policy in regard to total liability were strictly construed and we consider that case out of line with the authorities in this State and the rule generally followed. [See, Laboring Men's Mut. Aid Assn., 69 Minn. —, 171 N. W. 696, 38 L. R. A. 537 and note; 14 R. C. L., p. 1315, sec. 491.] We therefore hold there was no error in submitting the case to the jury.

It is next urged that the proofs of disability submitted were not sufficient to reasonably convince the defendant that liability under the policy did in fact exist. This contention is based upon the circumstance that in the proof signed by plaintiff as employee he stated that he had become totally disabled so that he was wholly unable to work on April 20, 1932. This was of course after his employment had ceased, and if an accepted fact, would, of course, bar plaintiff's right to recover. But plaintiff attempted to show that this statement was a clerical error which occurred in making out the proof and that the date intended was some time prior to the date when his employment ceased. Defendant's objection to this evidence was sustained. We think plaintiff was entitled to explain the date, particularly when there was other evidence that plaintiff was in fact totally disabled prior to the date he ceased to work. The case of Jarvis v. Northwestern Mutual Relief Assn., 78 N. W. 1089, 102 Wis. 546, cited by defendant approved the ruling in another case in which it was held that an incorrect statement of fact in proofs of loss made in good faith does not estop the beneficiary from proving the truth under proper pleadings, when a correct statement of facts in the proofs is not a condition precedent to the right of recovery. Similarly, in the case of Wall v. Casualty Company, 111 Mo. App. 504, 86 S. W. 491, it was held that a mistake in the proofs as to the date when the insured became totally disabled was not conclusive against his right to recover on the policy. [See, also, 33 C. J., p. 18, sec. 666.] The question of the time when plaintiff became totally and permanently disabled was, under the circumstances shown, a fact to be determined by the jury and we rule against this contention.

Defendant contends that this suit was premature for the reason that the purported proof of disability was not completed until October 24, 1932, and since monthly payments were not to commence under the terms of the policy until six months thereafter, a suit brought January 11, 1933, was therefore premature. Whatever merit there may be in this contention is lost to defendant because no such de-

834

fense was pleaded in its answer. The only reference to the six months period is couched in the following language: "And defendant, further answering the petition . of plaintiff herein, denies that six months prior to the filing of his petition plaintiff made due proof to the home office of defendant, in accordance with the terms and conditions of said policy of insurance, to the effect that plaintiff became totally and permanently disabled while in the employ of the St. Joseph Lead Company, and while said insurance was in force and effect as to plaintiff."

In the first place there was no allegation in the petition to which this denial could be directed. In Giboney v. Insurance Company, 48 Mo. App. 185, 1. c. 193, it is pointed out that such pleading constitutes "a denial and not an assertion of fact which is now set up to defeat plaintiff's recovery." So in Young v. Pennsylvania Fire Ins. Co., 187 S. W. 856, 269 Mo. 1, in discussing a similar situation,.the Supreme Court said: "As said by ROMBAUER, P. J., in Giboney v. Insurance Company, 48 Mo. App. 185, the question of premature suit is in the nature of a plea in abatement, and not a plea in bar. Such matters should be specifically pleaded. The answer in this does not invoke this plea in abatement. A mere general denial is not sufficient. A plea in abatement is in the nature of an affirmative defense, and must be specifically pleaded to be available." We think the foregoing authorities sufficiently dispose of this assignment.

It is contended that the circuit court had no jurisdiction because at the date of the trial but one installment was due in any event amounting to $44.92, which, under the provisions of section 1938, Remised Statutes 1929, was below the jurisdiction of that court. Defendant had denied all liability under the policy as to plaintiff by letter dated November 7, 1932. It further denied that the proofs submitted were sufficient, but after having itself made a thorough investigation of the case did in effect repudiate the contract. Under such circumstances we think the effective date upon which defendant would become liable to pay on the policy would be from the date of the repudiation of the contract or November 7, 1932, which was within the waiting period. [Bonslett v. New York Life Ins. Co., 190 S. W. 870.] Since the suit was filed January 11, 1933, there were then three installments due for which we think plaintiff was entitled to sue and therefore the amount involved was greater than fifty dollars and within the jurisdiction of the circuit court.

Error is assigned in the admission of certain testimony because of its alleged hearsay character. The testimony referred to was to the effect that certain witnesses were permitted to testify that they had heard plaintiff complain of having pain and shortness of breath and like matters. In so far as appears these complaints were made at the

very time plaintiff was in fact suffering. We do not consider such testimony within the hearsay rule. [Rainier v. Railroad, 271 S. W. 502; McHugh v. Transit Company, 190 Mo. 1. c. 85, 88 S. W. 853.] Also we are directed to certain testimony of Dr. Rubenstein as being hearsay and therefore incompetent. The testimony referred to is that, "plaintiff gave symptoms of nausea, vomiting, pain in the right lower quadrant of the abdomen, and that he had those symptoms, to the best recollection of witness, about a year or two." This testimony does not appear to be a repetition of statement made by plaintiff to the doctor but rather the doctor's own observation. There was also some testimony objected to as to what plaintiff told the doctor as to the history of the case. There never was any question about the history of plaintiff's injuries, sickness and the duration thereof. We are unable to agree that defendant could have been injured by this character of evidence.

Complaint is made as to the giving and refusing of certain instructions. We are not going to prolong this opinion by a discussion of all these instructions. The principal ground of objection is to the wording of plaintiff's instruction wherein it advises the jury that if plaintiff's ailments, if any, will prevent him for life, "from performing substantially every part of any occupation, business or profession he might be able to follow," then the jury might find him totally disabled within the meaning of the policy. We do not think the instruction faulty in using the word "substantially" as urged by defendant. It is in harmony with the decisions heretofore cited on the question of total disability and in particular the case of James v. Casualty Company, 113 Mo. App. 1. c. 628. The instructions as a whole fairly presented the case to the jury and we find no substantial error therein.

The plaintiff in this case recovered a judgment for the full amount due under the policy or $4,067.72. The trial court required a *remittitur* of $3,279.16, and finally entered an amended judgment for $808.56. This included installments falling due after the bringing of the suit as well as before the date upon which the defendant denied all liability under the policy. It is conceded that under the rule laid down in Bonslett v. New York Life Ins. Co., 190 S. W. 870, plaintiff would not be entitled to recover for any installments falling due after the beginning of the action. Under the view we take of the case he is also not entitled to recover on installments prior to the date of the repudiation but only from that date. We therefore hold that plaintiff is entitled to a judgment for three installments only, amounting to $134.76, and that he should be required to file a *remittitur* in the sum of $673.80. The judgment is accordingly affirmed upon condition that plaintiff file a *remittitur* as above in-

dicated within ten days from the date this opinion is handed down, otherwise the judgment will be reversed and the cause remanded.

*Allen, P. J.,* and *Smith, J.,* concur.