John ROSSMANN et al.,
Plaintiffs-Respondents,

v.

G. F. C. CORPORATION OF MISSOURI et al., Appellants-Defendants.

No. 40461.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 4, 1980.

Fortus & Anderson, Sidney Fortus, Clayton, for Old Republic Life Ins. Co.

Thompson & Mitchell, James J. Raymond, Richard W. Hokamp, St. Louis, for G.F.C. Corp.

Norton Y. Beilenson, Dolgin, Beilenson & Klein, Clayton, for plaintiffs-respondents.

GUNN, Presiding Judge.

This appeal arises out of a charge of negligence and bad faith in the processing and payment of a claim on a credit disability insurance policy. The jury verdict was in favor of both defendants, but the trial court granted plaintiff's motion for a new trial based upon, inter alia, alleged erroneous instructions.[1] Defendant G.F.C. Corporation of Missouri (GFC) and Old Republic Life Insurance Company (Old Republic) appeal asserting, in part, that the trial court erred in not granting their motions for directed verdict. We find that defendants' motions for directed verdict should have been granted and reverse the judgment.[2]

In ruling as we do, we view the evidence and reasonable inferences therefrom in the light most favorable to plaintiffs, disregarding defendants' evidence except as it aids plaintiffs' case. *Hawkins v. Whittenberg*, 587 S.W.2d 358 (Mo.App.1979). In so doing, we find that plaintiffs failed to present a submissible case against defendants.

On September 6, 1968, plaintiffs John and Bernice Rossmann applied for a loan at a St. Louis branch of GFC. According to Mrs. Rossmann they were advised that insurance needed to be purchased as a condition for securing the loan but they were not informed of the purpose nor nature of the insurance—although Mr. Rossmann acknowledged that he executed a document: "I hereby apply to Old Republic Life Insurance Company . . . for insurance to provide monthly disability payments to the above named creditor [GFC]. . . ." Of course, GFC's evidence differed mightily from the Rossmanns: they were explicitly advised that they were purchasing credit

disability insurance which would not afford coverage for any pre-existing illness or condition prior to the policy date of September 6, 1968. The policy terms specifically excluded coverage for any pre-existing condition. The Rossmanns signed all documents necessary to obtain a loan from GFC for $1,104.

On September 9, 1968, three days after the loan and date of the credit disability policy, Mr. Rossmann entered a veterans' hospital on a complaint of unconsciousness, weakness and shortness of breath, and a medical impression of hysterical conversion reaction was noted. He was discharged from the hospital on October 9, 1968. Between September 9, 1967 and September 9, 1968, Mr. Rossmann was hospitalized five times with similar symptoms, and subsequent to September 9, 1968 he was hospitalized nine additional times with similar symptoms. His hospital discharge summary in October, 1968 related that the illness had commenced in September, 1967.

While her husband was in the hospital after his attack in September, 1968, Mrs. Rossmann sought to make arrangements with GFC for the repayment of the loan. At that time—according to her—a GFC employee suggested that a disability claim be filed under the Old Republic insurance policy. Upon Mr. Rossmann's release from the hospital in October, 1968, both Mr. and Mrs. Rossmann obtained the aid of a GFC employee in filing an application for benefits. The trial testimony was somewhat nubilous as to whether Mr. Rossmann directly acknowledged on the claim form whether he had been afflicted with his illness prior to

---

1. The trial court originally granted *"plaintiff's"* motion for a new trial because of alleged erroneous instructions pertaining solely to Mr. Rossmann. Approximately one year later, the trial court entered a nunc pro tunc order granting *"plaintiffs'"* motion for a new trial, citing as support, two additional instructions, one of which pertained solely to Mrs. Rossmann. However, because we find that plaintiffs failed to make a submissible case, we need not consider the validity of the trial court's nunc pro tunc order nor its original order granting a new trial. Any alleged errors in instructions are immaterial as plaintiffs failed to make a sub-

missible case. *Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212 (Mo.App.1978).

2. Plaintiffs filed a motion to dismiss the appeal in that the transcript failed to include the closing arguments by reason of the reporter's lost notes. As plaintiffs failed to make a submissible case, any trial error in allowing alleged prejudicial remarks during the closing argument would be immaterial. *Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d at 214. We therefore deny plaintiffs' motion to dismiss the appeal.

taking out the disability insurance. His testimony was that he was "uncertain" whether he had personally marked the claim form indicating that he previously had the same disease for which he was seeking disability benefits. In any event the claim was submitted to Old Republic and benefit payments commenced. After five payments were made, Old Republic reviewed the claim form and concluded that the disability was as a result of an affliction possessed prior to the date of the insurance policy. Payments were stopped. GFC then urged the Rossmanns to make payments on the loan—in a mordacious and bellicose manner according to the Rossmanns, including telephone calls to the Rossmanns and a letter to Mrs. Rossmann's employer.[3] GFC's efforts at collecting the outstanding balance culminated in a magistrate court action with default judgment against the Rossmanns on June 17, 1970. Writs of sequestration on Mrs. Rossmann's wages followed.[4] Subsequently, the Rossmanns, through an attorney, sent a second disability claim to Old Republic with a physician's statement and a statement of the insured that Mr. Rossmann had not had an affliction predating the effective date of the disability policy but that his disability first occurred on October 5, 1968. Old Reliable asserted that its initial decision to decline benefits was proper on the basis of the disclosures in the first claim application. But as a result of the second, amended claim, Old Republic allowed it and paid the balance of the loan to GFC. GFC also refunded the Rossmanns $154.00 which it collected on the loan.

This law suit followed with the Rossmanns seeking $600,000 in damages. The theory of Mr. Rossmann's action against Old Republic was predicated on the tort of bad faith in its disruption of payments based on its failure to make an independent investigation of the accuracy of the statements made in the claim form. His charge against GFC was based on the negligence of a GFC employee in inserting on the original claim form a date of illness affliction—September 25, 1967—predating the insurance coverage.[5]

Mrs. Rossmann's theory of recovery was for negligence based on a principal-agency relationship: GFC as an agent for Old Republic negligently inserted the September 25, 1967 date of previous affliction. The charge against GFC was in negligently filling out the claim form with the insertion of the September 25 date.

We believe that the Rossmanns have failed to present a submissible claim against either Old Republic or GFC. Mr. Rossmann's theory of Old Republic's tort of bad faith in disruption of payments is too fenestrated to block out the light of law flowing in opposition to it. Initially we observe that the tort of bad faith in first party disability insurance cases has not been recognized in Missouri, and this is not the case to establish new precedent in this regard. *Dyer v. General American Life Ins. Co.*, 541 S.W.2d 702 (Mo.App.1976).

Mr. Rossmann failed to produce any evidence of Old Republic's bad faith in the payment of the disability claim. He argues that his evidence of bad faith in the disruption of payment of disability benefits is that Old Republic failed to make a proper investigation prior to termination of benefits. He alleges that Old Republic acted in bad faith when it terminated benefits based on a statement in the original claim form, which contained more than one person's handwriting, that Mr. Rossmann had been afflicted with the same illness one year prior to the effective date of the policy. To do so without conducting an independent medical examination of him or to make an independent examination of his medical rec-

---

3. The Rossmanns did not seek any recovery for outrageous conduct or emotional distress. *See: Pretsky v. Southwestern Bell Telephone Co.*, 396 S.W.2d 566 (Mo.1965); *Smith v. Standard Oil, Div. of Amoco Oil Co.*, 567 S.W.2d 412 (Mo.App.1978).

4. Mrs. Rossmann worked for the Missouri National Guard.

5. Mr. Rossmann did not assert any theory of principal-agency relationship between Old Republic and GFC.

ords, according to Mr. Rossmann, constituted substantial evidence of bad faith. We disagree.

■ In *Dyer v. General American Life Ins. Co.*, 541 S.W.2d, at 705, the court declined the "opportunity to extend the tort of bad faith refusal to pay disability benefits to an insured", and quoting from *Cox v. Washington National Insurance Co.*, 520 S.W.2d 76, 81 (Mo.App.1974), stated that if there was "an 'open question of fact or law determinative of the insurer's liability, the insurer, acting in good faith, may insist on a judicial determination of such questions without being penalized therefor.' " "Proofs of loss are exacted to enable the insurance company to determine whether the facts . . . were such that it ought to indemnify the insured." *Wall v. Continental Cas. Co.*, 111 Mo.App. 504, 520–521, 86 S.W. 491, 496 (1905). Statements in a proof of loss are binding against the insured and an insurance company may rely on such statements until contradicted or explained by the insured. *Id.; Parks v. Maryland Casualty Co.*, 230 Mo.App. 383, 91 S.W.2d 1186 (1936); *Annot.:* 58 A.L.R.2d 429 (1958); 3 Appelman, Insurance Law and Practice § 1471 (1967).[6] *See also: Prudential Property & Cas. Ins. Co. v. Cole*, 586 S.W.2d 433, 436 (Mo.App.1979) (insurer under no duty to investigate if answers to an insurance application are complete on its face). Old Republic was entitled to and did rely on the claim form until it was resubmitted. On receipt of the second claim form with the statement of Mr. Rossmann and his physician that the illness did not predate the effective date of the policy, Old Republic resumed payment. Furthermore, even assuming that Old Republic had conducted an investigation after receipt of the original claim form, the investigation would have disclosed that Mr. Rossmann had been hospitalized for similar symptoms on sever-

al occasions prior to the effective date of the policy, which would at least raise an open question of fact as to whether he was disabled prior to the effective date of the policy. *See: Frisella v. Reserve Life Ins. Co. of Dallas*, 583 S.W.2d 728 (Mo.App. 1979). In *Graham v. Guarantee Trust Life Ins. Co.*, 267 S.W.2d 692 (Mo.App.1954), after an investigation of hospital records of an insured indicating an experience of similar symptoms predating the effective date of the policy, the insurance company denied coverage. The jury award of payment of disability benefits was upheld but with a finding that there was insufficient evidence to submit to the jury the issue of the statutory penalty for vexatious refusal to pay.[7]

■ With regard to Mr. Rossmann's claim against GFC, the record is destitute of any evidence of any breach of duty owed in filling out the initial claim form. As noted, Mr. Rossmann does not assert an agency relationship by GFC for Old Republic. However, as the GFC employee did voluntarily assist Mr. Rossmann in the preparation of the claim, the duty to act with due care was obliged. *Wolfmeyer v. Otis Elevator Co.*, 262 S.W.2d 18 (Mo.1953); *Berry v. Emery, Bird, Thayer Dry Goods Co.*, 357 Mo. 808, 211 S.W.2d 35 (1948). But to present a submissible case of negligence, the plaintiff must prove by substantial evidence every fact necessary to establish liability. *Probst v. Seyer*, 353 S.W.2d 798 (Mo.1962); *Weber v. Hinds*, 440 S.W.2d 129 (Mo.App.1969). A plaintiff does not meet his burden if the evidence on any of the essential elements would leave a fact finder "in the nebulous twilight of speculation, conjecture and surmise." *Hawkins v. Whittenberg*, 587 S.W.2d at 361, *quoting from, Shelton v. Bruner*, 449 S.W.2d 673, 680 (Mo. App.1969). The issue of whether negligence can be inferred from the given facts and whether the evidence establishes a sub-

---

6. *See also: Young v. Metropolitan Life Ins. Co.*, 229 Mo.App. 823, 84 S.W.2d 1065 (1935).

7. *See:* § 375.420, RSMo 1978. In *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716 (Mo.App.1978), plaintiffs brought suit against their insurance company both under § 375.420

and on a tort of bad faith. The court stated that "[w]e do not say whether a bad faith refusal by an insurer of a benefit owed directly to an insured on a policy can support an action in tort, but only that the tenor of our law suggests otherwise." *Id.* at 724.

missible case is a judicial function. *Powell v. Watson*, 526 S.W.2d 318 (Mo.App.1975). We find that the evidence here fails to establish a breach of due care by GFC in assisting Mr. Rossmann in the completion of the claim form.

The dispute as to whether GFC was negligent in aiding in the preparation of the disability insurance policy centers on the date of September 25, 1967 in the claim application as the date of a pre-policy affliction leading to Old Republic's halting of payments. The best evidence Mr. Rossmann could muster at negating the fact that he personally provided the disqualifying date of prior affliction was his testimony that "I don't think it's mine" with regard to a checkmark made on the policy indicating a prior affliction. Also, the hand printed "Sept. 25, 1967" as the date of prior affliction "could be" his own printing, although he was "not sure" about the "1967" as he did not "make nines like that, or sixes". Mr. Rossmann's testimony is of no probative value for a disavowal of his providing and inserting the information leading to a disruption of policy payments by Old Republic due to a pre-policy affliction. "Any reply that is neither negative or positive such as the [replies] in this case . . , has no probative value." *Baker v. Brinker*, 585 S.W.2d 256, 258 (Mo.App.1979), *citing with approval, Globe Automatic Sprinkler Co. v. Laclede Packing Co.*, 93 S.W.2d 1053 (Mo.App.1936). The fact is that the testimony is manifest that Mr. Rossmann without the help of anyone supplied the information leading to the disruption of the policy payments. It is certain that Mr. Rossmann offered no evidence as to who wrote the date "Sept. 25, 1967". GFC absolutely denied inserting it. Absent evidence that GFC inserted the date and that it was done without due care, the Rossmanns' evidence fails to establish a breach of duty of due care by GFC, and "no inference could have been drawn and no finding could have been made, other than by forbidden resort to unbridled conjecture, rank surmise and palpable guesswork," *Hawkins*, 587 S.W.2d at 362, *quoting from, Graham v. Connor*, 412 S.W.2d 193, 202–203 (Mo.App.1967), that

GFC breached its duty to Mr. Rossmann. Thus, GFC's motion for directed verdict should have been granted as to Mr. Rossmann's claim.

Our finding that there was no evidence to support a conclusion that GFC was negligent in assisting Mr. Rossmann in the completion of the claim form strikes the death knell for Mrs. Rossmann's claim against it, and GFC's motion for directed verdict should have been granted as to her.

So, too, is our finding dispositive as to Mrs. Rossmann's claim against Old Republic. Her claim of negligence against Old Republic rests on the following syllogistic reasoning: (1) GFC was acting as an agent of Old Republic in assisting Mr. Rossmann in the completion of the disability claim form; (2) GFC did so negligently; (3) Mrs. Rossmann was damaged thereby; and (4) Old Republic was therefore liable in tort for the negligent act of its agent. Old Republic responds that Mrs. Rossmann, as a third party beneficiary, failed to make a submissible case of negligence against it because: (1) negligence is an impermissible cause of action in a first party insurance case; and (2) in any event she failed to make a case of negligence.

The short answer to Mrs. Rossmann's position is that the Rossmanns failed to produce evidence that GFC acted negligently in the completion of the claim disability form. Therefore, in the absence of proof of negligence, we need not resolve whether GFC was acting as an agent for Old Republic in assisting Mr. Rossmann in the completion of the form. *See: First Nat. Bank of Malden v. Farmers New World Life Ins. Co.*, 455 S.W.2d 517 (Mo.App.1970) (bank as holder of a group master life insurance policy on the lives of its debtor was held not to be liable as the agent of the insurance company, despite the fact the bank performed such services as preparing individual insurance certificates for the debtor and retained 50% of the premiums collected from the debtors). Without evidence of negligence on the part of GFC, there is nothing to impute to Old Republic, principal-agency relationship or not.

The motions of GFC and Old Republic for directed verdict should have been sustained.

Judgment reversed and the cause remanded for entry of judgment in accordance with this opinion.

STEPHAN and PUDLOWSKI, JJ., concur.